## JOHN J. McCARTHY, JR. *vs.* ANN G. TOBIN; ROBERT DiMINICO & another,[1] interveners.

Suffolk. December 7, 1998. - March 2, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Contract,* Sale of real estate, Construction of contract, Offer and acceptance, Condition, Waiver, Specific performance. *Real Property,* Sale, Purchase and sale agreement.

An offer to purchase real estate, which described the property and the price, stated that it "create[d] binding obligations," and provided that by their signatures the buyer "offer[ed]" and the seller "accepted," reflected the parties' intention to be bound by that document, and the execution of a purchase and sale agreement was merely a formality: the buyer was entitled to specific performance of the agreement. [86-88, 89-90]

A seller, who accepted a written offer to purchase which constituted a binding obligation, by her conduct waived the stated deadline for execution of a purchase and sale agreement, and the buyer's subsequent tender of a signed agreement and a deposit was timely. [88-89]

.

CIVIL ACTION commenced in the Superior Court Department on September 25, 1995.

Motions for summary judgment and for reconsideration were heard by *Peter M. Lauriat,* J., and entry of separate and final judgment was ordered by *E. Susan Garsh,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Shepard Davidson* for the interveners.

*J. Gavin Cockfield* for the plaintiff.

*Richard A. Oetheimer,* for the defendant, submitted a brief.

*Robert J. Hoffman,* for Massachusetts Conveyancers Association & another, amici curiae, submitted a brief.

ABRAMS, J. We granted the interveners' application for further appellate review following the Appeals Court's opinion in *McCarthy* v. *Tobin,* 44 Mass. App. Ct. 274, 279 (1998), concluding

---

[1] Juliann DiMinico.

that the plaintiff was entitled to specific performance of a real estate purchase. The plaintiff, John J. McCarthy, Jr., claims that the defendant, Ann G. Tobin, agreed to sell certain real estate to him. He asserts that they created a binding agreement when they signed a standard offer to purchase (OTP) form. The DiMinicos intervened because they later agreed to purchase the property in question from Tobin. McCarthy and Tobin each moved for summary judgment and the DiMinicos for partial summary judgment. The motion judge allowed Tobin's and the DiMinicos' motions, declaring that Tobin had no obligation to sell to McCarthy and therefore McCarthy had no right to the specific performance of the real estate agreement. The Appeals Court vacated the judgment in favor of Tobin and the DiMinicos and remanded for entry of judgment in favor of McCarthy. The Appeals Court reasoned that the OTP was a firm offer that became a contract binding on the parties when it was accepted. *Id.* at 278-279.

The facts, which are undisputed, are as follows. On August 9, 1995, McCarthy executed an offer to purchase real estate on a pre-printed form generated by the Greater Boston Real Estate Board. The OTP contained, among other provisions, a description of the property, the price to be paid, deposit requirements, limited title requirements, and the time and place for closing. The OTP also included several provisions that are the basis of this dispute. The OTP required that the parties "shall, on or before 5 P.M. August 16, 1995, execute the applicable Standard Form Purchase and Sale Agreement recommended by the Greater Boston Real Estate Board . . . which, when executed, shall be the agreement between the parties hereto." In the section containing additional terms and conditions, a typewritten insertion states, "Subject to a Purchase and Sale Agreement satisfactory to Buyer and Seller." The OTP provided, "Time is of the essence hereof." Finally, an unnumbered paragraph immediately above the signature line states: "NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney." Tobin signed the OTP on August 11, 1995.

On August 16, 1995, sometime after 5 P.M., Tobin's lawyer sent a first draft of the purchase and sale agreement by facsimile transmission to McCarthy's lawyer. On August 21, McCarthy's lawyer sent a letter by facsimile transmission containing his comments and proposing several changes to Tobin's lawyer.

The changes laid out the requirements for good title; imposed on Tobin the risk of casualty to the premises before sale; solicited indemnification, for title insurance purposes, regarding mechanics' liens, parties in possession, and hazardous materials; and sought an acknowledgment that the premises' systems were operational. The next day, the two lawyers discussed the proposed revisions. They did not discuss an extension of the deadline for signing the purchase and sale agreement, and Tobin's lawyer did not object to the fact that the deadline had already passed. On August 23, Tobin's lawyer sent a second draft of the agreement to McCarthy's lawyer. On August 25, a Friday, McCarthy's lawyer informed Tobin's lawyer that the agreement was acceptable, McCarthy would sign it, and it would be delivered the following Monday.[2] On Saturday, August 26, McCarthy signed the purchase and sale agreement. On the same day, Tobin accepted the DiMinicos' offer to purchase the property.

On August 28, McCarthy delivered the executed agreement and a deposit to Tobin's broker. The next day, Tobin's lawyer told McCarthy's lawyer that the agreement was late and that Tobin had already accepted the DiMinicos' offer. In September, 1995, Tobin and the DiMinicos executed a purchase and sale agreement. Before the deal closed, McCarthy filed this action for specific performance and damages.

1. *Firm offer.* The primary issue is whether the OTP executed by McCarthy and Tobin was a binding contract. Tobin and the DiMinicos argue that it was not because of the provision requiring the execution of a purchase and sale agreement. McCarthy urges that he and Tobin intended to be bound by the OTP and that execution of the purchase and sale agreement was merely a formality.

McCarthy argues that the OTP adequately described the property to be sold and the price to be paid. The remaining terms covered by the purchase and sale agreement were subsidiary matters which did not preclude the formation of a binding contract. *Lafayette Place Assocs.* v. *Boston Redevelopment Auth.*, 427 Mass. 509, 516 (1998). *Blomendale* v. *Imbrescia*, 25 Mass. App. Ct. 144, 147 (1987). We agree.

---

[2]McCarthy and Tobin disagree about the content of this conversation. McCarthy claims that Tobin's lawyer agreed to the Monday delivery date. Tobin's lawyer says that the agreement was to be signed on Friday. Because this is not a dispute of material fact, it is irrelevant to our inquiry.

The controlling fact is the intention of the parties. See *Schwanbeck* v. *Federal-Mogul Corp.*, 412 Mass. 703, 706 (1992), quoting *Kuzmeskus* v. *Pickup Motor Co.*, 330 Mass. 490, 493 (1953) ("It is a settled principle of contract law that '[a] promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract' "); *Levenson* v. *L.M.I. Realty Corp.*, 31 Mass. App. Ct. 127, 130 (1991).

Tobin argues that language contemplating the execution of a final written agreement gives rise to a strong inference that she and McCarthy have not agreed to all material aspects of a transaction and thus that they do not intend to be bound. See *Rosenfield* v. *United States Trust Co.*, 290 Mass. 210, 216 (1935); *Goren* v. *Royal Invs., Inc.*, 25 Mass. App. Ct. 137, 140 (1987). "If, however, the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract." *Goren, supra.* See *Coan* v. *Holbrook*, 327 Mass. 221, 224 (1951) ("Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof . . .").

Although the provisions of the purchase and sale agreement can be the subject of negotiation, "norms exist for their customary resolution." *Goren, supra* at 141. "If parties specify formulae and procedures that, although contingent on future events, provide mechanisms to narrow present uncertainties to rights and obligations, their agreement is binding." *Lafayette Place Assocs., supra* at 518.

The interveners argue that McCarthy departed from the customary resolution of any open issues, and therefore manifested his intent not to be bound, by requesting several additions to the purchase and sale agreement. We agree with the Appeals Court, however, that McCarthy's revisions were "ministerial and nonessential terms of the bargain." *McCarthy, supra* at 276, quoting *Goren, supra* at 139. Contrast *Blomendale, supra* at 146-147 (restrictions on delivery of deposit and warranties sought to be included in purchase and sale agreement reflected imperfect negotiations).

The inference that the OTP was binding is bolstered by the notice printed on the form. McCarthy and Tobin were alerted to

the fact that the OTP "create[d] binding obligations." The question is what those obligations were. The DiMinicos argue that the OTP merely obligated the parties to negotiate the purchase and sale agreement in good faith. We disagree. The OTP employs familiar contractual language. It states that McCarthy "hereby offer[s] to buy" the property, and Tobin's signature indicates that "[t]his Offer is hereby accepted." The OTP also details the amount to be paid and when, describes the property bought, and specifies for how long the offer was open. This was a firm offer, the acceptance of which bound Tobin to sell and McCarthy to buy the subject property. We conclude that the OTP reflects the parties' intention to be bound.[3]

2. *Waiver.* Even though the purchase and sale agreement was not necessary to bind the parties, its execution was required by the OTP. The agreement is unambiguous in this regard and thus must be enforced.[4] *Schwanbeck, supra* at 706. Courts hold parties to deadlines they have imposed on themselves when they agree that time is of the essence. *Vickery* v. *Walton,* 26 Mass. App. Ct. 1030, 1031 (1989). The DiMinicos argue that McCarthy violated his obligations by failing to execute the purchase and sale agreement by the August 16 deadline.

The August 16 date is a condition subsequent. Without an executed purchase and sale agreement by that date, the OTP provides that the parties' obligations to each other are extinguished. 3A A. Corbin, Contracts § 739, at 442 (1960) ("A fact is a condition subsequent to the legal relation that it extinguishes"). Conditions, however, may be waived. *Church of God in Christ, Inc.* v. *Congregation Kehillath Jacob,* 370 Mass. 828, 834 (1976); 3A A. Corbin, *supra* at § 757.

We are persuaded that Tobin waived the August 16 deadline.[5] Tobin's lawyer, acting as her agent, voluntarily undertook the task of drafting the purchase and sale agreement. He did not

[3]If parties do not intend to be bound by a preliminary agreement until the execution of a more formal document, they should employ language such as that suggested by the Appeals Court. *McCarthy* v. *Tobin,* 44 Mass. App. Ct. 274, 279 n.10 (1998), quoting *Goren* v. *Royal Invs., Inc.,* 25 Mass. App. Ct. 137, 142-143 (1987). The form may be redrafted if it does not reflect the intention of the parties.

[4]The typewritten addition subjecting the OTP to a purchase and sale agreement satisfactory to both parties may be contradictory, but it is not ambiguous. Whether we construe the preprinted language or the addition as controlling, there was a waiver.

[5]The issue of waiver is ordinarily one for the fact finder. If the facts are

produce the first draft until it was impossible for McCarthy to sign it before the deadline. He also did not object to the passage of the deadline in the telephone calls and facsimile transmissions that followed. Instead, he continued to deal with McCarthy's lawyer in an effort to craft a mutually satisfactory agreement. In the only express communication concerning the execution of the agreement, Tobin's lawyer implied that a date later than August 16 was satisfactory.[6] Words and conduct attributable to Tobin signified her waiver of the August 16 deadline. See *Church of God in Christ, Inc.*, *supra* at 832 (oral extension, acceptance of payments, and continued dealings between parties signified waiver). Once there was a waiver, time was no longer of the essence. McCarthy's subsequent tender of the signed agreement and a deposit was timely and within reason. See *id.* at 835. We conclude that there is no issue of material fact and that McCarthy was entitled to a judgment as a matter of law. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

3. *Specific performance.* On remand, the issue of the appropriate remedy will arise. A judge generally has considerable discretion with respect to granting specific performance, but it is usually granted in disputes involving the conveyance of land. *Raynor v. Russell*, 353 Mass. 366, 367 (1967), and cases cited. "It is well-settled law in this Commonwealth that real property is unique and that money damages will often be inadequate to redress a deprivation of an interest in land." *Greenfield Country Estates Tenants Ass'n, Inc. v. Deep*, 423 Mass. 81, 88 (1996). It is therefore proper to allow McCarthy specific relief.

McCarthy's right to specific performance is unaltered by Tobin's execution of a purchase and sale agreement with the DiMinicos. McCarthy filed this action prior to the execution of that agreement. The DiMinicos had actual notice of McCarthy's claim to the property and assumed the risk of a result favorable to McCarthy.[7] Cf. *Greenfield*, *supra* at 89 (specific performance was proper remedy to enforce option to purchase real property;

---

undisputed, however, waiver is a question of law. See, e.g., *Linda Coal & Supply Co. v. Tasa Coal Co.*, 416 Pa. 97, 101 (1964).

[6]Whether Tobin's lawyer agreed to a date of August 25 or August 28 is irrelevant in light of the consequences of the waiver.

[7]The DiMinicos closed on the property. They hold legal title, subject to the equitable obligation to convey the property to McCarthy on payment of the purchase price set by Tobin and McCarthy. See *Greenfield Country Estates Tenants Ass'n, Inc. v. Deep*, 423 Mass. 81, 89 (1996).

right not extinguished by sale to third party with notice).

The judgment is vacated. The case is remanded to the Superior Court for the entry of a judgment in favor of McCarthy's claim for specific performance.

*So ordered.*