Summerville, J.
This is an action in contract brought by the plaintiff, Hunneman & Company (hereafter, “Hunneman”), a real estate brokerage firm, to recover a sales commission it claims it earned pursuant to a contract with the defendants, Joseph and Mary Nigro (hereafter, “the Nigros” or “sellers”). Summary judgment was entered for the plaintiff and the defendants bring this expedited appeal pursuant to Rule 8A of the District/Municipal Courts Rules for Appellate Division Appeal. The single issue raised is the propriety of the allowance of the motion for summary judgment. We affirm.
The undisputed facts taken from the affidavits and exhibits on the motion for summary judgment are as follows. Hunneman and the Nigros executed an “Exclusive Rights to Sell Listing” (the “Listing Agreement”), on October 4, 1996. The Listing Agreement provided that the Nigros would pay Hunneman a six per cent commission “in the event (hat a buyer was procured by the BROKER, or SELLER, or anyone else in accordance with the terms of the Agreement, ready, willing and able to purchase the property located at 90 Prospect Street, Wakefield MA” (hereafter “the property”). The Listing Agreement stated an asking price of $419,000 “or a lower price acceptable by the seller.”
*5 Once the Listing Agreement was signed, Hunneman advertised the property and shortly thereafter introduced the Nigros to Brenda Bennett and Bengt Her-manrud (the “buyers”), who were interested in purchasing their home. On October 28, 1996, the buyers and the Nigros executed a “Contract To Purchase” (hereafter the “CTP”) for an agreed price of $415,000. The CTP was executed on a preprinted form published by the Greater Salem Association of Realtors, Inc. The CTP provided: a description of the property; the purchase price; the nature of the title to be conveyed; and the deposits paid, including a schedule of further deposits to be made both before and during the delivery of deed. The CTP provided a closing date of December 16,1996.
The CTP also included several “special provisions” related to the sale of the property. The first of these related to the identification of certain lighting fixtures and draperies to be included (or excluded) from the sale. The second provided that the sellers “will be allowed to remain in the property at no charge thru [sic] January 16, 1997.” At the bottom of the document the following statement appeared above the signatures of both parties:
NOTICE: THIS IS A LEGAL DOCUMENT THAT CREATES CERTAIN BINDING OBLIGATIONS. IF NOT UNDERSTOOD, SEEK COMPETENT ADVICE.
Immediately above the signatures of both sellers, the following statement appeared:
“This offer is hereby accepted at 4:15 p.m. on October 28,1996.”
On November 15, 1996, counsel for the Nigros received a letter from counsel for the buyers suggesting a $4,000 “credit” for roof repairs and the granting of a driveway easement for the benefit of the buyers. Counsel for the Nigros responded the same day stating that his clients were “not willing to agree to [those] revisions.” This letter made no reference to an intent to reject the sale. Again on the same day (November 15), counsel for the buyers responded by fax stating that the buyers were “willing to concede the roof and driveway issues.”
On November 18, 1996, Nigros’ counsel sent another letter via fax and regular mail to counsel for the buyers stating their position that the request for the $4,000 credit for roof repairs and the driveway easement
resulted in a counter offer to the original Contract to Purchase executed by the parties on October 28, 1996. Consequently, due to my clients’ clear rejection of said counter offer the Contract to Purchase is null and void and there is no longer an agreement between the parties.
Once again, counsel for the buyers immediately responded on the same date (November 18), with the statement that the buyers intended to continue to perform pursuant to the CTP.
Thereafter, counsel for the buyers continued to advise counsel for the Nigros that his clients remained ready and willing to purchase the property in accordance with the CTP and sought assurances that the closing would occur as agreed on December 16, 1996. The buyers attempted to obtain financing to purchase the property, however, any financing arrangement was contingent upon a real estate appraisal. Negotiations finally ended when the Nigros refused to allow such an appraisal to occur. The buyers ultimately abandoned their interest in the sale after the Nigros reimbursed them for out-of-pocket expenses incurred in connection with their attempt to purchase the property. •
By letter to the Nigros dated December 16, 1996, Hunneman demanded payment of its six percent sales commission in the amount of $24,900 based on the purchase price provided in the CTP. The Nigros refused to pay.
*6 The plaintiffs motion for partial summary judgment was brought on a claim of breach of contract. The plaintiff argued that “there is no dispute that during the terms of the Listing Agreement the buyers were procured, and that the buyers were ready, willing and able to purchase the property in accordance with the terms of the Listing Agreement.” In allowing summary judgment in favor of the plaintiff, the motion judge made the following notation:
Upon consideration the exclusive brokerage agreement being fully integrated and defendants’ understanding of its impact being of no account, for the reasons set forth in the memorandum in support of this motion. ALLOWED.
Discussion
Summary judgment is obtainable “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass. R. Civ. P., Rule 56(c). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). We view the evidence in the light most favorable to the non-moving party. See Curtis v. School Committee of Falmouth, 420 Mass. 749 (1995).
The issue presented by the motion for summary judgment was Hunneman’s entitlement to a sales commission pursuant to the Listing Agreement reached with the Nigros. The essential terms of that agreement required Hunneman to produce a buyer “ready, willing and able” to pay the listing price of $419,000 for their home “or ... a lower price acceptable by the seller.” The defendants present essentially two arguments in support of their position that the judge erred in allowing summary judgment. Defendants argue that (1) genuine issues of material fact precluded entry of final judgment at this juncture in the proceedings and (2) plaintiff failed to demonstrate that it was entitled to the sales commission as a matter of law.
The defendants argue that the entry of summary judgment was inappropriate because the parties proceeded to negotiate a purchase and sale agreement after executing the CTP and “never intended the ‘Contract to Purchase’ to be the sole and exclusive document governing all aspects of the proposed sale of the property.” Although the defendants suggest that subsequent discussions of the details of the CTP created “genuine issues of material fact” requiring a trial, we agree with the trial judge that this argument is unavailing because the CTP, signed by both parties on October 28, 1996, was a “fully integrated,” enforceable contract. See Allstate Ins. Co. v. Reynolds, 43 Mass. App. Ct. 927 (1997) (‘That some facts are in dispute does not necessarily defeat a motion for summary judgment. The existence of disputed facts is consequential only if those facts have a material bearing on disposition of the case”).
We find the issue of whether or not the CTP in the present case was an enforceable contract is decided by McCarthy v. Tobin, 429 Mass. 84 (1999). In McCarthy, the Supreme Judicial Court found that an Offer to Purchase (OTP) real estate, signed by both buyer and seller, created binding obligations despite a subsequent failure of the parties to reach agreement on a purchase and sale agreement. The primary issue in McCarthy was whether the parties intended to be bound when both buyer and seller signed a standard Offer to Purchase (OTP) real estate.
The OTP in McCarthy included, among other provisions, “a description of the property, the price to be paid, deposit requirements, and the time and place for closing.” The following statement appeared above the signatures of both parties: *7 “NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.” McCarthy, supra at 85. The OTP required the parties to execute a subsequent purchase and sale agreement “which, when executed, shall become the agreement between the parties thereto.” Id. Although the parties in McCarthy ultimately failed to reach agreement on the purchase and sale, the court found that the OTP created binding obligations on both parties and that the remaining terms covered by the purchase and sale agreement were subsidiary matters which did not preclude the formation of a binding contract. McCarthy, supra at 86.
We find the CTP in the present case to have created binding obligations. It is a ■more fully integrated agreement than the OTP in McCarthy. While both the OTP in McCarthy and the CTP in the present case share an agreed purchase price, description of the property, deposit requirements, title requirements, and the time and place for closing, the CTP here goes further. The CTP in the present case included details for the inclusion and exclusion of electrical fixtures and draperies —■ as well as arrangements to allow the Nigros to remain in the property for a period of time after title had passed to the buyers. We also note that tíre OTP in McCarthy was “[s]ubject to a Purchase and Sale agreement satisfactory to Buyer and Seller.” There was no such contingency in the CTP signed by the parties here. The Nigros maintain that the parties engaged counsel to negotiate a “mutually acceptable P&S to govern all aspects of the sale” (emphasis in original) but there was no requirement to do so. The CTP itself was silent as to any further agreement to be made by the parties in this case.
The Nigros argue that McCarthy v. Tobin, supra is inapplicable to the present case because the seller there wrongfully rejected one buyer’s offer to purchase in favor of a second, more lucrative offer to purchase which amounted to “classic bad faith” on the part of the seller. We disagree. The Supreme Judicial Court stated that the “primary” issue was “whether the OTP executed by [the buyer] and [seller] was a binding contract.” McCarthy, supra, at 86. The court looked to the language of the offer to purchase to determine the parties’ intent.
We also find Hunneman is entitled to its sale commission because the Nigros’ purported rejection of the purchase and sale agreement occurred only after both parties manifested an unequivocal intent to be bound by the CTP. It is clear from the affidavits and exhibits submitted in support of the motion for summary judgment that the buyers remained ready and willing to purchase the property on the terms provided in the CTP throughout the negotiations. As noted above, the buyers in fact requested a $4,000 credit for roof repairs and a driveway easement in a letter sent by their attorney. However, that request merely elicited the response that the Nigros were “not willing to agree to [those] revisions,” in a letter sent by counsel dated November 15,1996. Counsel for the buyers immediately withdrew their request and reaffirmed their intention to be bound by the terms of the CTP. Although the Nigros argue in this appeal that they “rejected certain material demands the buyer had raised,” their purported rejection of the sale was made three days after the buyers withdrew the proposed modifications and repeated their intent to be bound by the terms of the CTP.
The Nigros also contend that the judge erred in allowing the plaintiffs motion for summary judgment as a matter of law, arguing that Hunneman’s claim of entitlement to the sales commission is foreclosed by the holding in Tristam’s Landing v. Wait, 376 Mass. 622 (1975). The Supreme Judicial Court adopted the following rule in Tristam:
[A] real estate broker is entitled to a commission from the seller only if (a) he produces a purchaser ready, willing, and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with *8 the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. However, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker’s claim is valid and must be paid.
The Nigros argue that under Tristam’s Landing, a broker must prove a “wrongful act or interference” by a seller seeking to enforce rights of entitlement to a sales commission in circumstances where the closing does not occur. We agree. However, finding as we do that the CTP was a binding agreement, the Nigros’ breach of that contract is a “wrongful act” which entitles Hunneman to its commission.
We find no error in the allowance of summary judgment in favor of the plaintiff. The plaintiff procured a ready, willing and able buyer for the Nigros during the term of the Listing Agreement and the proposed sale was wrongfully rejected by the sellers. Accordingly, the appeal is dismissed. We affirm the judgment in favor of Hunneman & Company.