Kelly, J.
Introduction
On or about July 16,1998, the plaintiff-appellee Hunneman Real Estate Corporation d/b/a Hunneman & Company (“Hunneman”) filed a complaint against the defendant-appellant Jacob Milhem (“Milhem”). Hunneman claimed that Milhem owed Hunneman a real estate broker’s commission in connection with the marketing and sale of a parcel of property owned by Milhem. On or about August 3,1998, Milhem filed an answer and counterclaim.
On July 7,1999, Hunneman filed a motion for summary judgment with supporting affidavits. Milhem opposed the motion for summary judgment and also sup *230 plied a supporting affidavit After a hearing, Hunneman’s motion for summary-judgment was allowed on July 29, 1999, and judgment entered for Hunneman in the amount of $18,000. Milhem now appeals the motion judge’s allowance of Hun-neman’s summary judgment motion.
Factual Background
The undisputed facts taken from the affidavits and exhibits filed in connection with the motion for summary judgment are as follows. On July 30,1997, Milhem entered into an Exclusive Listing Agreement (the “Listing Agreement”) with Hunneman. The Listing Agreement granted to Hunneman the exclusive right to sell certain property located at 12 Valley Circle, Peabody, Massachusetts (the “Property”) for the period from July 30,1997 to January 28,1998 for the price of $329,900 “or such price or terms acceptable to [Milhem].” The Listing Agreement further provided that Milhem would pay to Hunneman a fee of six percent (6%) of the sales price if, during the period covered by the Listing Agreement, the Property “is sold by anyone ... or if a prospective purchaser is procured ready, willing and able to buy in accordance with the price and terms set forth herein, or such other price or terms acceptable to [Milhem].” At the time that Milhem entered into the Listing Agreement with Hunneman, Milhem was listed as the record owner of the Property in the Essex County Registry of Deeds.
After entering into the listing Agreement with Milhem, Hunneman marketed the Properly and eventually found a prospective purchaser, Marsha Lynn Mucci (“Mucci”). On September 6, 1997, Milhem and Mucci entered into a Contract to Purchase (the “Contract”). The Contract provided that Mucci would purchase the Properly from Mil-hem for $300,000. Mucci paid $1,000 upon execution of the Contract and was bound to pay an additional deposit of $14,000 on or before September 16,1997. On October 1, 1997, Milhem entered into a Purchase and Sale Agreement (the “P&S Agreement’) with Mucci. The P&S Agreement provided for a closing to take place on October 31,1997.
An Addendum to the P&S Agreement contained a provision regarding Hunne-man’s broker’s fee. It provided that the fee would be due “only if, as and when papers pass, the deed is recorded and proceeds received.” Hunneman did not take part in the drafting of the Addendum, however, and no one from Hunneman signed it. The Addendum also made no mention of the agreement for Hunneman’s fee set forth in the Listing Agreement between Hunneman and Milhem.
Thereafter, on October 14, 1997, Attorney Joseph S. Carter, Jr., as attorney to Ms. Doris Milhem, Milhem’s wife (“Ms. Milhem”), wrote to Hunneman and stated that Ms. Milhem was the sole owner of the Property. The letter further stated that as Milhem did not own the Property and did not have authorization to sign for Ms. Milhem, any agreements that Milhem made to sell the Property “should be considered null and void.”[2] By letter dated October 15, 1997, Hunneman informed Milhem that it expected to be paid its full commission pursuant to the terms of the Listing Agreement on or before October 31,1997. Milhem refused to pay the commission.
*231 Discussion
A grant of summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 232 (1997); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass R. Civ. P., Rule 56(c), 365 Mass. 824 (1974). The moving party assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Highlands Ins. Co. v. Aerovox Inc., supra; Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). If the moving party establishes the absence of a triable issue, the opposing party must respond and allege specific facts that would establish the existence of a genuine issue of material fact for trial. Pederson v. Time, Inc., supra; Mass R. Civ. P., Rule 56(e), 365 Mass. 825 (1974). Although the material supplied by the moving party in support of its motion need not disprove an essential element of the claim of the party on whom the burden of proof at trial will rest, it must demonstrate that proof of that element at trial is unlikely to be forthcoming. Highlands Ins. Co. v. Aerovox Inc., supra; Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). Once the moving party meets its burden, the burden shifts to the opposing party to demonstrate with admissible evidence the existence of a dispute as to material facts. Kourouvacilis v. General Motors Corp., supra at 711.
The issue on the motion for summary judgment was whether Hunneman was entitled to its commission under the terms of the Listing Agreement with Milhem. The terms of the Listing Agreement required Milhem to pay the commission if the Property was sold or “if a prospective purchaser is procured ready, willing and able to buy [the Property]....” Milhem argues that this language was not sufficient to alert him to his liability for the commission even if the sale of the Property was not consummated. We reject this contention, even after viewing the evidence in the light most favorable to Milhem as the non-moving party. See Curtis v. School Comm. of Falmouth, 420 Mass. 749, 753 (1995).
The conditions that must be met in order for a broker to become entitled to a commission for finding a purchaser of real estate are well established:
When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract.
Hillis v. Lake, 421 Mass. 537, 542 (1995), quoting Tristram’s Landing, Inc. v. Wait, 367 Mass. 622, 629 (1975). If the sale is not consummated because of the wrongful conduct of the seller, the broker still has an enforceable claim to the commission so long as the first two requirements are met. Hillis v. Lake, supra; Tristram’s Landing, Inc. v. Wait, supra.
Hunneman met the first condition in that it produced a buyer, Mucci, who was ready, willing and able to purchase the Property at a price acceptable to Milhem. Although the $300,000 purchase price set forth in the Contract between Milhem and Mucci was less than the $329,900 price in the Listing Agreement, Milhem manifested his acceptance of this price by signing the Contract and the P&S Agreement. The signing of the Contract and the P&S Agreement also satisfied the second condition, which requires the purchaser to enter into a binding contract with the owner for the purchase of the property. These agreements provided that Mucci would purchase the Property from Milbem and that a closing would take place on October 31, 1997. Both the Contract and the P&S Agreement are valid and binding, and Milhem does not assert otherwise.
The third condition was not satisfied because Mucci did not complete the trans *232 action for the purchase of the Property in accordance with the terms of the P&S Agreement. It is undisputed that Milhem entered into the P&S Agreement under the belief that he could convey the Property. The reason that the purchase and sale was not consummated, however, is that Milhem was either unwilling or unable to convey the Property to Mucci in accordance with the terms of the P&S Agreement. Milhem’s failure to comply with the terms of the P&S Agreement constituted a breach of that agreement, and such breach is a wrongful act on Mil-hem’s part that gave Hunneman an enforceable claim to its commission. See Hunneman & Co. v. Nigro, 2000 Mass. App. Div. 4, 8 (Breach of a binding contract to purchase is a wrongful act that entitles the broker to its commission). Thus, there is no genuine issue of material fact with respect to compliance with the three conditions set forth in Hillis v. Lake, supra and Tristram’s Landing, supra, and Hunneman is entitled to its broker’s commission as a matter of law. See Highlands Ins. Co. v. Aerovox Inc., supra; Cassesso v. Commissioner of Correction, supra.
Milhem argues that the language in the Listing Agreement was insufficient to alert him to the fact that he would be liable for the commission in the absence of the completed sale of the Property. Milhem’s reliance on Currier v. Kosinski, 24 Mass. App. Ct. 106 (1987) in support of this proposition is misplaced. The brokerage agreement at issue in Currier v. Kosinski stated that “the commission would be earned if the broker procured a buyer ‘ready, willing and able to buy said property in accordance with the price, terms and conditions of the Agreement or such other price, terms and conditions as shall be acceptable to the Seller.’” Id. at 107. The court in Currier stated that this contractual provision “generally reflects the first of Tristram’s three conditions.” Id. Because “[t]he other two conditions [set forth in Tristram's Landing] are not explicitly negated!,]” the court in Currier went on to analyze whether those conditions had been met. See id. at 107-108.
When the buyers in Currier offered to purchase the property for $4,000 less than the asking price, only one of the two joint owners of the property signed the offer form. Currier v. Kosinski, supra at 108. As the other owner’s agreement was essential to the sale of the property, the court in Currier held that the second condition, a binding contract for the sale of the property, was not met. Id. at 108-109. As discussed previously, that condition was met here with the existence of the binding P&S Agreement.
For the forgoing reasons, we affirm the motion judge’s grant of summary judgment in favor of Hunneman and dismiss Milhem’s appeal.

 In his answers to Hunneman’s request for admissions dated as of February 3, 1999, Milhem denied that he was the record owner of the Property on each of the following dates: July 1,1997, August 1,1997, September 1,1997, October 1,1997 and October 31, 1997. In his answers to interrogatories dated as of February 3, 1999, when he was asked to support his contention that Ms. Milhem was the owner of the Properly, Milhem responded that he “executed a deed to [Ms.] Milhem on July 11, 1996.” In his own affidavit dated as of July 28, 1999, Milhem states that he “believed [ed] at the time I signed the paperwork that I could sell the [Property.” He states further that Ms. Milhem informed him that the deed that he had given to her earlier prohibited him from selling the Property. Milhem never produced the deed that allegedly evidenced Ms. Milhem’s record ownership of the Property.