King, J.
Plaintiffs, Mordechai Levin and Stavros Frantzis (“plaintiffs”), as trustees of the M&S Realty Trust, initiated this action against defendants, Russell L. Peterson and Joseph Vecchio (“defendants”), as trustees of the Ashton Amory Realty Trust, seeking specific performance of their contract with the defendants for the purchase of real properly. Plaintiffs now move for summary judgment pursuant to Mass.R.Civ.P. 56. After hearing and considering the arguments of counsel, plaintiffs’ motion for summary judgment will be ALLOWED for the following reasons.
FACTS
The following material facts are not in dispute. Shortly before February 4, 2000, the plaintiffs made a written offer to purchase from the defendants, real property located at 59 Amory Street, Jamaica Plain, Massachusetts. Counsel for the defendants reviewed this initial offer and proposed changes that were ultimately incorporated into the revised written offer that both parties signed on or about February 11, 2000. Included in this document was language that purported to bind both parties to a financing arrangement in which the defendants would provide a take-back mortgage for 70% of the purchase price in accordance with commercial loans “customarily used by banks in the greater Boston area.” Further, the document specified that the plaintiffs would reimburse up to $20,000 of the total costs incurred by the defendants to remove an existing underground fuel tank, so long as the defendants complied with “all city, state and federal regulations at [the defendants’] own cost and ex *705 pense. The parties contemplated specifying the remaining “immaterial” terms of the offer in a comprehensive purchase and sale agreement.
On March 10, 2000, a first-draft of the purchase and sale agreement, prepared by the defendants’ counsel, was forwarded to plaintiffs’ counsel. A redraft with minor immaterial corrections was immediately forwarded back to the defendants. This was followed by an additional request from the defendants for personal guarantees by the trustees of the M&S Realty Trust on the loan. The plaintiffs responded that such guarantees were not contemplated in the signed offer. Ultimately, neither party agreed to execute a purchase and sale agreement because of the dispute over the personal guarantees.
Litigation commenced on May 5, 2000 with the filing by the plaintiffs of a complaint and motion for a preliminary injunction seeking to enjoin the defendants from conveying the property to a third party. On May 10, 2000, the court (Hinkle, J.) granted the preliminary injunction.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that it is entitled to judgment in its favor. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case, or by “demonstrating that proof of that element is unlikely at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “Ifthe moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion for summary judgment.” Pederson, 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. Lalonde v. Eissner, 405 Mass. 207, 209 (1989). In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community Nat’l Bank, 369 Mass. at 553, Mass.R.Civ.P. 56(c).
The Plaintiffs Are Not Obligated to Provide Personal Guarantees
An offer to purchase is a binding contract when it provides evidence that the parties intend to be bound. McCarthy v. Tobin, 429 Mass. 84, 88 (1999). When the offer to purchase adequately describes the property to be sold and the price to be paid, the remaining terms covered by the purchase and sale agreement are subsidiary matters which do not preclude the formation of a binding contract. Id. at 86. “If the parties have agreed upon all material terms, it maybe inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract.” Id. at 87; Goren v. Royal Invs., Inc., 25 Mass.App.Ct. 137, 140 (1987); see Coan v. Holbrook, 327 Mass. 221, 224 (1951).
The plaintiffs allege that the written offer that was accepted by the defendants on February 11, 2000 created a binding obligation on the parties to include the terms identified within the four corners of the written offer into a final purchase and sale agreement. Plaintiffs assert that the insistence by the defendants to include language binding the trustees to personal guarantees for the mortgage has resulted in a breach of this contract, compelling the plaintiffs to seek specific performance of the written offer that was signed by both parties.[3] In support of this assertion, the plaintiffs state that the language in the offer to purchase lacks any reference to personal guarantees and that any issues not specifically defined in the written offer were “immaterial, ministerial, or capable of resolution by resort to norms.”
In response, the defendants contend that it was always their intention to bind the trustee buyers to personally guarantee the commercial loan obligation, valued at over $1.8 million dollars. In support of their assertion, the defendants note that the language contained within the written offer clearly contemplated personal guarantees, as such guarantees are “customarily used by banks in the greater Boston area.” The defendants oppose summary judgment, arguing that their opposing interpretation of the language in the written offer creates a triable issue of fact.
This court disagrees with the position of the defendants. Pursuant to the agreement of the parties, it was the defendants’ obligation to reduce the terms contained within the written offer to a purchase and sale agreement. This requirement is evidenced by the provision in the written offer that "the definitive terms of this Offer will be embodied in a more comprehensive Purchase and Sale Agreement which will carry out the terms of this Offer said will contain such agreements, representations, warranties or conditions as are customary in transactions of the nature contemplated by this Offer’’ (emphasis added).
A draft of the purchase and sale agreement was prepared by defendants’ counsel and forwarded to the plaintiffs on March 10, 2000. The requirement of personal guarantees was not included in this draft of the purchase and sale agreement, despite the requirement that it would contain all “customary conditions.” In fact, the language contained in the draft belies the *706 defendants’ current position, that it was their actual intention to bind the plaintiffs personally. The draft of the purchase and sale agreement, as prepared by defendants’ counsel, provides:
26. LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder.
Any ambiguity that may have existed as to the meaning of the word “customary,” was resolved in the language chosen by the defendants in the draft of the purchase and sale agreement. The above clause demonstrates that they contemplated the potential liability of the plaintiffs, yet they chose to include this clause specifically preventing the plaintiffs from being held personally liable for any obligation, including the mortgage note. Had the defendants, in fact, intended at that time to bind the plaintiffs personally on the mortgage, the draft purchase and sale agreement would have included such an express provision. Upon receipt of the defendants’ draft, counsel for the plaintiffs returned the draft indicating their acceptance subject to minor nonmaterial changes, such as specifying which agent would hold deposits in escrow and the amount of insurance that the defendants would maintain on the property until the delivery of the deed. It was not until the preparation of the second draft by defendants’ counsel on April 7, 2000, that the requirement of personal guarantees was first mentioned.
The now-disputed interpretation of the “customary obligations” imposed by the written offer had already been resolved at the time of the initial drafting of -the purchase and sale agreement. There were no material terms remaining to be agreed upon and, as articulated in McCarthy, the purpose of the purchase and sale agreement to be drafted by the defendants was merely “a polished memorandum of an already binding contract.” McCarthy, 429 Mass. at 87. For the foregoing reasons, the court concludes that the parties had a binding contract, that the contract did not require the plaintiffs to provide personal guarantees and that the defendants breached the contract.
REMEDY
A judge has considerable discretion with respect to granting specific performance, but it is usually granted in disputes involving the conveyance of land. McCarthy, 429 Mass. at 89; Maynor v. Russell, 353 Mass. 366, 367 (1967). “It is well-settled law in this Commonwealth that real property is unique and money damages will often be inadequate to redress a deprivation of an interest in land.” McCarthy, 429 Mass. at 89; Greenfield Country Estates Tenants Ass’n, Inc. v. Deep, 423 Mass. 81, 88 (1996). Specific performance is appropriate in favor of the plaintiffs in the present case. The written offer, prepared and reviewed by both parties, contained all material terms, including a description of the property and the price to be paid. The parties demonstrated their intention to be bound to those terms by signing the written offer, creating a binding contract that required the defendant to include those material terms in a final purchase and sale agreement. There was no language or provisions binding the plaintiffs to personal guarantees in either draft of the written offer, nor in the draft of the purchase and sale agreement. Because the inclusion of personal guarantees into the purchase and sale agreement would introduce a material term not contemplated in the written offer, the plaintiffs’ motion for specific performance without obligation to personal guarantees shall be allowed.
ORDER
For the foregoing reasons, the Plaintiffs Motion for Summary Judgment is ALLOWED. Judgment shall enter:
1. Declaring that the written offer signed on February 11, 2000 by Mordechai Levin and Stavros Frantzis, as trustees of the M&S Realty Trust and Russell L. Peterson and Joseph Vecchio, as trustees of the Ashton Amory Realty Trust, was a binding contract for the purchase of real property.
2. Russell L. Peterson and Joseph Vecchio, as trustees of the Ashton Amory Realty Trust, are hereby permanently enjoined from failing to convey title to the property, known as 59 Amory Street, Jamaica Plain, Massachusetts, to Mordechai Levin and Stavros Frantzis, as trustees of the M&S Realty Trust, without obligation to personal guarantees within 60 days in accordance with the draft purchase and sale agreement identified as Exhibit 5, contained within the “Exhibits for Hearing on Plaintiffs’ Motion for Preliminary Injunction,” dated May 5, 2000.
3. Pursuant to Mass.R.Civ.P. 54(b), the court finds no just cause to delay the entry of the above final judgments.
4. The case will be continued for a final pre-trial conference to June 20, 2001 at 2:30 pm with regard to the plaintiffs Mass. G.L.c. 93A claim.

In the summary judgment papers, the parties raised several other issues in addition to the personal guarantee issue. However, the parties have resolved those issues so that the only remaining issue in the case involves whether the parties had a binding contract and, if so, whether the purchasers were obligated to provide personal guarantees.