Fabricant, J.
INTRODUCTION
This action arises from an agreement (in the form of an accepted offer) for the purchase and sale of real estate. The plaintiff buyer alleges that the defendant seller repudiated and breached the agreement; the plaintiff seeks specific performance. The defendant seller contends that it was the buyer who breached, and that the filing of this action, along with the recording of a memorandum of lis pendens, constituted intentional interference with a potential sale to another; for this the seller has counterclaimed for damages. Presently before the Court is the defendant’s motion for summary judgment.
BACKGROUND
The record before the Court provides the following factual background.[1] On March 14, 2002, the plaintiff buyer submitted to the defendant seller an offer to purchase property located at 1548 Great Plain Avenue in Needham. The defendant seller accepted the offer by signing the form on that same date. The offer was on a standard form, generally similar, but not identical, to the form described in McCarthy v. Tobin, 429 Mass. 84, 85 (1999). The offer set a purchase price of $215,000, with a $500 deposit paid with the offer, and an additional $10,000 deposit to be paid upon signing of “the applicable Standard Form Purchase and Sale Agreement recommended by the Greater Boston Real Estate Board or any form substantially similar thereto, which, when executed, shall be the agreement between the parties hereto,” the deadline for which was set as May 10, 2002. The offer set a closing date of August 10, 2002, and provided that “time is of the essence hereof.” The offer further provided that the remedy for default by the seller would be forfeiture of the deposit, “without recourse to either party.” The offer incorporated a rider appearing on its reverse, and ended with the following; “NOTICE; This is a legal document that creates certain binding obligations. If not understood, consult an attorney.” See McCarthy v. Tobin, 429 Mass. at 87-88.
The rider on the back of the offer form consists of nearly a page of typed material, followed by a handwritten sentence. The typed material sets forth the *534 seller’s acknowledgment that the buyer “intend[s] to demolish the existing residential building and thereafter construct one dwelling on the subject premises.” It goes on to provide that the purchase “is subject to” the buyer’s “obtaining all Town of Need-ham, State and Federal approvals which are necessary in order for BUYER to obtain building permits to construct on the subject premises one house.” The document proceeds to list a number of types of approvals that might be needed, “without intending any limitation,” and to provide that “said approvals shall also be further subject to the expiration of all appeal periods with no appeals by third parties being filed.” Additional language requires the seller to cooperate with the buyer’s efforts by signing petitions, allowing consultants on the property, and the like, subject to a right to be kept informed of progress. The rider then provides:
If the [sic] despite BUYER’S diligent efforts or in the reasonable opinion of BUYER’S land use counsel, despite diligent efforts, BUYER’S counsel determines at any time in writing with copy to SELLER that obtaining said approvals is unlikely, BUYER will give written notice to SELLER within five (5) days of said determination and in such event this agreement shall be null and void and of no further force and effect, and the deposit shall be forthwith returned to BUYER and this agreement shall be null and void and of no further force and effect, [sic] otherwise BUYER shall be deemed to have waived the provisions of this paragraph.
The final, handwritten, sentence of the rider states “Buyer has until April 16, 2002 to obtain preliminary approvals for construction of new dwelling.” Both buyer and seller initialed this addition, as well as certain other handwritten changes to the typed form.
The next communication between the parties, as far as the record discloses, was a faxed letter from buyer to seller, dated April 15, 2002, as follows:
Enclosed, please find a letter from Needham Survey indicating that there is preliminary approval from the building department with the exception of complying with the Needham Conservation Commission for flood plan [sic] and wetlands. This approval has been granted next door and should not be a problem.
The referenced attachment is a letter to the plaintiff from a George N. Giunta, PLS, of Needham Survey Associates, Inc., stating that “after a preliminary review of the above referenced property, it is my professional opinion that a house appears to be able to be constructed but would require the approval of both the Board of Appeals (relief from the town flood plain line) and the Conservation Commission for wetlands issues.”
The seller responded by letter from her attorney, dated April 18, 2002, asserting the position that the buyer had failed to fulfill the terms of the offer, and that as a consequence the seller “as a fiduciary ... is required to take steps at this time to do what is best for the estate.” There followed an offer to sell on entirely new terms, with a purchase price of $250,000, no contingencies, signing of a purchase and sale agreement by April 26, and a deposit of ten percent to be given at that time, and a closing date within thirty days thereafter. The letter informed the buyer that “If I do not have a mutually agreeable offer to purchase signed by your client by 5:00 p.m. on April 19, 2002, my client will pursue her other options.” The buyer’s response to this communication was the filing of this action on May 14,. 2002.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case, or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson v. Time, Inc., 404 Mass. at 17. If the record establishes the absence of any genuine dispute of material fact, but reveals that the opposing party is entitled to judgment as a matter of law, summary judgment may be entered for the opposing party, even in the absence of a cross motion. See Mass.R.Civ.P. 56(c), last sentence.
Here, neither side suggests that any factual dispute exists, and the pleadings, together with exhibits appended to the complaint, provide all facts material to the issues raised. The dispute between the parties as to the meaning of the executed offer to purchase presents solely an issue of contract interpretation, which is a question of law for the Court. See Gross v. Prudential Ins. Co. of America, Inc., 48 Mass.App.Ct. 115, 119 (1999); USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989). Accordingly, the case is ripe for decision on summary judgment.
*535 The defendant seller contends that the last sentence of the rider established a condition precedent that the buyer obtain “preliminary approvals” by April 16, 2002, that those “preliminary approvals” had to be from town authorities, and had to include all approvals necessary to the construction, and that failure of the condition precedent rendered the contract null and void. The buyer’s April 15,2002, letter established that it had not met that condition; accordingly, she had no further obligation under the contract. As a fail-back position, the seller contends that the buyer’s failure to execute a purchase and sale agreement by the May 10, 2002, deadline set in the offer was a second failure of a condition precedent, again relieving her of any obligation.
These theories, in the Court’s view, reflect a misinterpretation of the contract terms, and of applicable law. The fail-back theory conflicts with the rule established in McCarthy v. Tobin, 429 Mass. at 85-89. The Supreme Judicial Court held in that case that an accepted offer to purchase, if it contains all material terms of the transaction, is a binding and enforceable contract to buy and sell, even though it calls for subsequent execution of a purchase and sale agreement, which never occurs. Execution of such a document, the Court held, may be a condition subsequent, but that condition may be waived, leaving the other obligations established by the accepted offer still in force.
Here, the accepted offer contained all material terms: identification of the property and of the parties, price, timing, and applicable contingencies. Under these circumstances, the only purpose of a purchase and sale agreement was “to serve as a polished memorandum of an already binding contract.” Id. at 87, quoting Goren v. Royal Invs., Inc., 25 Mass.App.Ct. 137, 140 (1987). Moreover, the parties here had even agreed on the form of the purchase and sale agreement; the offer provided for execution of the standard form recommended by the Greater Boston Real Estate Board. Compare McCarthy, 429 Mass. at 85 (offer provided for agreement “satisfactory to Buyer and Seller”). Despite the existing agreement, the seller’s attorney’s letter of April 18, 2002, made clear that she would not execute an agreement on the terms provided in the executed offer. That refusal, if not a repudiation of the contract, at least waived any right she may have had to require the buyer to tender such an agreement, with the deposit that was supposed to accompany it.[2] See Foster v. Bartolomeo, 31 Mass.App.Ct. 592, 594 (1991) (buyer not required to “go through the sham of a tender” after seller had repudiated agreement).
The question that remains is whether the seller’s position, as expressed in her attorney’s letter, was justified by a failure on the part of the buyer to meet an obligation imposed on it by the last sentence of the rider. This question turns on interpretation of that sentence, considered in the context of the rider read as a whole, and in the context of the overall transaction.
The rider, overall, provides for the buyer to obtain an unlimited number and variety of governmental approvals, at a level of absolute finality, including the expiration of all appeal periods. The task was obviously substantial, and likely to consume considerable time and effort; hence the unusually long period between the March 14 date of the offer and the August 10 closing date. If the buyer cannot obtain the required approvals, or determines upon expert advice that doing so is unlikely, then the buyer may notify the seller, whereupon the agreement becomes void, and the deposit is to be returned. However — and this is of crucial importance to the issue presented here — the rider expressly provides that the Buyer “shall be deemed to have waived the provisions of this paragraph” if it fails to give notice as described. This language, acknowledging the possibility of waiver by the Buyer, eliminates any doubt as to the overall import of the rider as a whole: the rider is a contingency, for the benefit of the buyer, giving the buyer a way out of the deal if the necessary approvals cannot be obtained before the closing, or the prospect appears too uncertain. The rider thus effectively places on the seller the entire risk of lack of approval; by accepting the offer, she has agreed to take the property off the market for a lengthy period, subject to a substantial possibility that the deal will fall through for lack of approvals. The deal, as thus understood, was not favorable to the seller, but she accepted it and became bound by it.
In light of this understanding of the rider as a whole, the role of the handwritten sentence at the end is apparent: the parties obviously agreed to add it as a way of providing a degree of mitigation, for the benefit of the seller, of the risk-shifting effect of the rider. By obtaining “preliminary approvals” by April 16, 2002, the buyer would give the seller some degree of assurance that the deal would ultimately close, sparing her the long period of complete uncertainty that the rider otherwise creates.
The document does not define “preliminary approvals," and the meaning of the phrase is less than clear. The earlier language of the rider expressly refers to “Town of Needham, State and Federal approvals,” leaving no doubt that the final approvals contemplated are those of governmental authorities, which would take considerably longer than the single month between the offer and the April 16 deadline. But the earlier language does not reference “preliminary” approvals, and as the buyer points out, public authorities do not generally give preliminary approvals. The phrase thus cannot be coextensive with the full, final approvals from governmental authorities referred to in the earlier part of the rider, as the seller appears to *536 contend. The buyer suggests that the phrase refers to the preliminary opinion of its own consultant that approval would be likely, and points out that that is exactly what it provided. “Approval” seems an odd word for such an opinion from a hired expert, but this interpretation is the only one offered that is not directly refuted by the language of the rider and the circumstances of the transaction. The Court therefore adopts it.
Under this interpretation, the buyer had met its obligation as of April 16, 2002. The Court thus has no occasion to consider what consequence would follow from a failure to meet that obligation — i.e., whether such failure would discharge the seller, or would merely waive the buyer’s right under the rider to rescind for lack of approval.
Since the buyer performed all that was required, the seller had no right to rescind. The seller’s attorney’s letter, unequivocally expressing her refusal to perform under the agreed terms, constituted a breach, entitling the buyer to relief. What relief is warranted remains to be seen; specific performance is certainly within the Court’s discretion, but does not follow automatically from the determination of liability. See Tobin v. McCarthy, 429 Mass. at 89.
The defendant’s counterclaim, alleging interference with her contractual relations with a subsequent potential buyer, depends on a determination that she was free to enter into such relations. The rulings expressed herein establish that she was not. Accordingly, the plaintiff is entitled to summary judgment on the counterclaim, as well as on liability on the plaintiffs claim.
CONCLUSION AND ORDER
For the reasons stated herein, the Defendant’s Motion for Summary Judgment is DENIED, and it is hereby ORDERED that summary judgment enter in favor of the plaintiff as to liability on the plaintiffs claim and as to the defendant’s counterclaim. Counsel are directed to submit, within fourteen days of this date, reports expressing their positions as to the appropriate remedy, including an indication of whether they seek an evidentiary hearing with respect to remedy, and if so, the nature and substance of the evidence they seek to present. The case will be scheduled for hearing as to remedy upon review of the reports submitted.

The defendant has provided a statement of undisputed material facts, pursuant to Superior Court rule 9A(b)(5). The defendant’s statement makes reference to exhibits, none of which are actually attached, but which appear to correspond to exhibits appended to the complaint. No other evidentiary material is appended to or referenced in the defendant’s Rule 9A(b)(5) statement. The factual assertions provided in the statement generally quote or paraphrase allegations of the complaint or material contained in the exhibits thereto, but also add certain characterizations or interpretations of those documents. The plaintiff has not responded to the defendant’s statement of undisputed facts in the manner provided by Rule 9A(b)(5), thereby waiving any opportunity to contest those factual assertions contained therein that are supported by referenced materials properly before the Court. Nor has the plaintiff offered any affidavits or other evidentiary materials. Under these circumstances, the Court draws the facts solely from the documents appended to the complaint, the authenticity of which is established by the pleadings.

The record provides no indication of which party had undertaken to prepare the agreement in the first instance.