NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-925

EMILY SOTOMAYOR

vs.

EIDOLON OPTICAL, LLC, & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants timely appeal from an order enforcing a settlement agreement and a final judgment ordering them to pay $9,999 to the plaintiff. On appeal, the defendants claim that the agreement never moved beyond the state of imperfect negotiations. We affirm.

Background. Following an unhappy ending to the parties' employment relationship, on January 17, 2020, Emily Sotomayor filed a one-count complaint in the Superior Court alleging sexual harassment in violation of G. L. c. 151B. Eidolon Optical, LLC (Eidolon) and Victor Doherty (the defendants) denied the allegations and raised counterclaims asserting that Sotomayor, the former director of technology, misappropriated or

_____

[1] Victor Doherty.

destroyed the defendants' confidential and proprietary information and used it to solicit business from the defendants' customers.[2] At the joint request of the parties, several continuances of the hearing on Sotomayor's motion to dismiss in part were granted while the parties engaged in settlement negotiations.

Sotomayor's attorney made the initial offer to settle the case for $10,000. On August 27, 2020, the defendants' attorney represented that his clients were "willing to settle all claims" for $9,999. He indicated that any settlement agreement must contain "the standard provisions in settlement agreements in employment cases," and was contingent upon an agreement by Sotomayor "to return any Eidolon property she has in her possession (including any and all photographs, data, or other files that she created in the performance of her duties for Eidolon or that otherwise belong to Eidolon)." The next day, the defendants' attorney asked Sotomayor's attorney to confirm they had "a deal before [he] put together a settlement agreement." Sotomayor's attorney quickly responded that he had heard back from Sotomayor and the parties had "an agreement in principle."

---

[2] The counterclaim alleged common law conversion and trespass to chattels, and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

2

When Sotomayor's attorney subsequently inquired about the "estimated time of arrival" of the settlement agreement, the defendants' attorney indicated he was "just waiting for approval from the client, and [he had] just followed up with [Doherty]" and would "have it over to you as soon as possible."

Over the next two months, the parties negotiated in detail over exactly what materials Sotomayor was required to locate and return to the defendants. In connection with their October 28, 2020 joint motion to continue the hearing, the attorneys informed the court that they "have reached a settlement in principle and are hopeful to finalize a formal settlement agreement within the next several weeks." Following Sotomayor's agreement to one additional provision, her attorney requested, on three occasions, an "execution" copy of the settlement agreement. The defendants' attorney provided an agreement to Sotomayor's attorney on November 9, 2020. On November 13, 2020, Sotomayor signed and returned the "settlement agreement and release of claims" (November 13 agreement).[3] According to Sotomayor's attorney, the defendants' attorney acknowledged

_____

[3] The November 13 agreement required Sotomayor, among other things, to certify that the property listed in Exhibit A to the agreement constitutes all of Eidolon's property in her possession or control; to return all of it within five days of signing the agreement; and to promise not to retain or disseminate any copies of the property.

3

receipt and indicated he would work on obtaining settlement checks from the defendants.

On November 19, Sotomayor's attorney stated that his client had drafted an e-mail about certain photos, but was awaiting the countersigned agreement. The defendants' attorney responded, "Checking in with Victor -- I'll get it to you ASAP." In response to another e-mail on December 2 asking simply, "What's going on[,]" the defendants' attorney indicated that Doherty had some medical issues and the defendants' attorney was still waiting on him. Asked for an update by Sotomayor's attorney on January 12, 2021, the defendants' attorney stated he had none, he understood Doherty was "still dealing with medical issues[,]" and he planned to withdraw from the matter shortly.

On January 20, 2021, the defendants, for the first time, took the position, through their successor counsel, that there was no binding settlement agreement because Doherty had not signed it.

Discussion. "An enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms." Targus Group Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010). "Where, as here, the negotiations were memorialized in a trail of uncontested e-mails, whether the parties agreed on all material terms is treated as a question of

4

law that we review de novo." Duff v. McKay, 89 Mass. App. Ct. 538, 544 (2016). Based on the attorneys' e-mail exchanges and the language of the November 13 agreement, we conclude that a binding and enforceable contract formed on that date.

After months of negotiations (which included a request by the defendants' attorney that Sotomayor's attorney confirm her agreement to the terms before he began drafting an agreement), and an explanation -- in response to an inquiry about when he would send a draft agreement -- that he was waiting for his client's approval, the defendants' attorney drafted the November 13 settlement agreement and sent it to Sotomayor's attorney. The agreement was signed by Sotomayor, who immediately began to perform her duties thereunder. The agreement not only contained all of the material terms previously negotiated by the attorneys, including the amount of the consideration, the method of payment, and a provision governing the return of the property held by Sotomayor, but also the standard terms one would expect to see in a settlement agreement of this type that had been referenced as a requirement by the defendants' attorney back in August 2020. The agreement was written in the present tense rather than the future, stating it "is being entered into between [the parties] to resolve . . . all of [Sotomayor's] claims and potential claims [and] . . . all of Defendants' claims and potential claims." See Targus Group Int'l, Inc., 76

Mass. App. Ct. at 433 (text was "telling").  The agreement warned Sotomayor about its gravitas, and required Sotomayor to acknowledge that she had been given ten days to "consider [its] meaning and effect."  The agreement further advised Sotomayor to consult with an attorney, and instructed her to read the agreement carefully, language inconsistent with an informal agreement to agree.  Compare McCarthy v. Tobin, 429 Mass. 84, 87-88 (1999) (inference that offer to purchase [OTP] was binding bolstered by notice on the form stating OTP created binding obligations).  Moreover, the document, which contained a standard integration clause, neither referenced unresolved issues nor contained language that would have demonstrated the defendants' purported lack of intention to be bound "until and unless" Doherty signed a physical copy of the agreement.  See id. at 88 n.3.  Doherty's later statement of his intention in this regard -- first expressed in his affidavit supporting his opposition to Sotomayor's February 2021 motion to enforce the agreement -- did not create a genuine issue of material fact regarding intent.

Nothing we have said in this decision affects the defendants' right to bring a breach of contract action against Sotomayor if she fails to fulfill her obligations under the

settlement agreement.  See Targus Group Int'l, Inc., 76 Mass. App. Ct. at 434 n.12.

Order enforcing settlement agreement affirmed.

Judgment affirmed.

By the Court (Green, C.J., Shin & Hershfang, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  April 28, 2023.

---

[4] The panelists are listed in order of seniority.