Lauriat, J.
Peter K. Lewenberg (“Lewenberg") brought this action against Victor R. Del Regno (“Del Regno”), Jack J. Laurendeau (“Laurendeau”), Alan L. Doyon (“Doyon”), and William A. Schwartz (“Schwartz”) (known collectively as “the Directors”) for breach of fiduciary duties that they allegedly owed to Lewenberg while serving as the Board of Directors of MAI-Alper, Inc. (“Alper”), a closely held corporation in which all parties owned stock. Lewenberg alleges that the Directors did not provide him with information that they were obligated to disclose in order to allow Lewenberg to make an informed decision whether or when to resign from Alper.
This matter is before the court on the defendants’ motion for summary judgment on all counts. For the following reasons, defendants’ motion is denied.
BACKGROUND
Alper was a local food brokerage business. It was incorporated under Massachusetts law with its ownership lying entirely in the hands of selected employees chosen because they occupied key positions within the corporation. The Directors collectively owned 51% of Alper. Lewenberg owned 2,600 shares of Alper stock, or approximately 3.5% of the corporation.
Lewenberg worked for Alper in various capacities from 1970 until April of 1999. On March 30, 1999, he notified Alper of his decision to resign from the corporation. During Lewenberg’s tenure, Alper had gone through several business changes, and had acquired a number of smaller brokerage firms. However, the mid-to-late 1990s saw a substantial transformation of the food brokerage industry, marked by a trend toward the consolidation of smaller entities into regional or national brokerage firms. Alper was neither unaware of nor immune from these changing conditions. The corporation was approached by several competitors seeking merger, alliance, or acquisition. A number of such overtures took place in October of 1998, including an approach by Acosta, one of Alper’s large competitors. However, the main focus of Alper’s investigation into growth opportunities in October of 1998 lay with Crossmark, another competitor. Ultimately, Alper decided not to join with Crossmark.
The effect of the industry-wide trend toward consolidation was discussed at Alper’s annual shareholders’ meeting in December of 1998. With Lewenberg in attendance, the Directors acknowledged that the topography of their industry was changing, that some investigation into Alper’s place in this new landscape had already occurred, and that the directors would continue to explore new growth opportunities. The Directors made no further disclosures to Alper’s shareholders during Lewenbergs tenure with the corporation.
The Directors decided, during their January 1999 board meeting, to approach large food brokerage firms' to solicit their views as to how Alper could best fit in with their companies. Two companies, Acosta and Advantage, meaningfully responded to Alper’s overtures and a good deal of information sharing took place in February and March of 1999. On March 30, 1999, the day Lewenberg announced his resignation, several of the Directors flew to Baltimore to meet with Acosta and Advantage representatives to review the plans those companies had formulated in response to Alper’s solicitations. The meeting with Acosta took place on April 1, 1999. It did not conclude with any agreement between Alper and Acosta. On April 12, 1999, Acosta presented Alper with a proposal that the Directors found more acceptable. Negotiations continued until April 21, 1999, when Alper’s stockholders accepted an agreement by which Acosta would acquire Alper.
These events had a substantial impact on Lewenberg. His resignation triggered a provision in Alper’s Articles of Organization which required him to offer his stock back to the corporation in accordance with a predetermined pricing formula. The company elected to purchase Lewenberg’s stock. Applying the pricing formula, Alper paid Lewenberg $80 per share for a total of $208,000. Following Alper’s acquisition by Acosta, all of Alper’s then remaining shareholders were paid $600 per share. Thus, Alper purchased Lewenberg’s stock for $1,352,000 less than he would have been paid under the terms of the payout implemented after Alper’s acquisition by Acosta. Lewenberg filed the present action against the Directors on November 22, 1999.
DISCUSSION
The standards governing a summary judgment motion are well known. The court will grant summary judgment when there are no genuine issues of material fact and where the record, including the pleadings and affidavits, entitles the moving party to judgment as a matter of law. Casesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating that there are no triable issues. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The non-moving party cannot defeat a summary judgment motion by resting on the pleadings or by merely asserting disputed issues of fact. Lalonde v. Eissner, 405 Mass. 207, 209 (1989). However, for the purposes of a summary judgment, the court will review the facts and all reasonable inferences from those facts in the light most favorable to the non-moving party. Ford Motor Co., Inc. v. Barrett, 403 Mass. 240, 242 (1988).
I.
The parties’ initial disagreement concerns the nature and scope of the duty that the Directors owed to Lewenberg. The Directors contend that their duty to disclose all material facts is equivalent to the duty imposed by the federal security laws. Lewenberg asserts that the Directors should be held to a higher standard of duty applicable to all stockholders ofa closely held corporation.
A closely held corporation is one “typified by(l) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority participation in the management, direction and opera *738 tions of the corporation.” Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 586 (1975). There is evidence in this case that Alper had less than fifty stockholders and that its stock ownership was limited to key employees. The court concludes that the number of stockholders is relatively small and that they have no market opportunities for their shares in the generally accepted sense. The fact that the Directors collectively own 51% of Alper’s shares satisfies Donahue’s third requirement.
The corporate form in the context of a closely held corporation presents unique dangers for minority shareholders. Without a market for the corporation’s shares, a minority shareholder’s investment can be used by the majority to accomplish ends antithetical to the minority shareholder’s interests and desires. Additionally, stockholders must own at least fifty percent of the shares in order to file for dissolution of the corporation under G.L.c. 156B, §99(A). Therefore, minority stockholders have scant opportunities to control their investment.
Massachusetts has recognized the extraordinary perils of minority stockholders in closed corporations. To ease this danger, the Supreme Judicial Court has recognized that regardless of their number, “stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another. In our previous decisions, we have defined the standard of duty owed by partners to one another as the ‘utmost good faith and loyalty.’ ” Id. at 593. In fulfilling these duties, stockholder s may not “act out of avarice, expediency or self interest in derogation of their duty of loyalty to the other stockholders and to the corporation.” Id.
This is not to say that the majority must end each day with a shareholders’ meeting to disclose the day’s events. In a bow to business realities, the Court has recognized that management must have some maneuvering room in which to establish the corporation’s policies, and that therefore “(i]t must have a large measure of discretion, for example, in declaring or withholding dividends, deciding whether to merge or consolidate, establishing the salaries of corporate officers, dismissing directors with or without cause, and hiring and firing corporate employees.” Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 851 (1976). If the controlling group of a closely held corporation can demonstrate a legitimate business purpose motivating its actions, the court still must weigh that purpose “against the practicability of a less harmful alternative.” Id. at 852.
Applying these principles to the present case, the court concludes that the duty the Directors owed Lewenberg is the heightened duty applicable to shareholders of a closely held corporation.
II.
Having established the duty that the Directors owed to Lewenberg, the court turns to the question of when that duty ended. All parties agree that the stock repurchase proceeded in accordance with Alper’s Articles of Organization, Amendment Schedule A, Section 3, which reads:
(a) If the Stockholder is or shall at any time or times become employed by the Corporation . . . and his employment... terminates for any reason other than death, the Corporation shall in that event have the right (but not the obligation) to purchase all (but not less than all) the Stock standing in the name of the Stockholder at the time of such termination at a price equal to the “fair market value” of such stock, as that term is defined hereinafter . . . The said right in the Corporation shall be exercisable at any time during the two years following the date of such termination.
(b) The Corporation’s election to purchase Stock in accordance with the preceding subparagraph shall be exercisable by written notice mailed to the Stockholder at his address ... or delivered to him in hand, which notice shall specify the price to be paid ... and a date . . . not less than fifteen (15) nor more than thirty (30) days after the date of such notice, as the date on which the Stock will be purchased and payment made therefor at such date, or, if the Corporation elects, over a ten year period with equal quarterly payments at six (6) percent interest per annum . . . On the date specified in said notice from the Corporation, the Stockholder shall deliver to the Corporation the stock certificates covering his Stock . . .
The language of this Article contemplates circumstances beyond a mere simultaneous tender and purchase upon resignation. Alper’s former employees may remain stockholders in perpetuity, wait two years before learning their status, or be asked to deliver their stock in as little as fifteen days after their resignation. Thus, it is clear that there is no relationship between a person’s role as an employee and as a stockholder. The record before the court does not include the required written notice. There is some evidence that Lewenberg was instructed to deliver his stock to the corporation on April 23, 1999, and was to receive payment on May 2, 1999, both of which dates were beyond Alper’s acceptance of the Acosta acquisition. However, there is no evidence that this actually occurred. Since the duty owed by the Directors depends on an individual’s status as a stockholder rather than as an employee, the court cannot determine when their fiduciary obligation to Lewenberg ended. This raises an unresolved material issue of fact sufficient to preclude summary judgment at this time.
III.
The court recognizes that it has addressed an issue not specifically raised in the parties' summary judgment motion and opposition papers. Therefore, the motion for summary judgment is denied without prejudice.
ORDER
For the foregoing reasons, the Defendants’ Motion for Summary Judgment is DENIED without prejudice.