Lauriat, J.
Peter K. Lewenberg (“Lewenberg”) brought this action for breach of fiduciary duties against Victor R. Del Regno (“Del Regno”), Jack J. Laurendeau (“Laurendeau”), Alan L. Doyon (“Doyon”), and William A. Schwartz (“Schwartz”) (collectively, “the Directors”) for breach of fiduciary duties owed Lewenberg while they served as the Board of Directors of MAl-Alper, Inc. (“Alper”), a corporation in which all parties owned stock. Lewenberg seeks damages that he alleges resulted from the Directors’ failure to provide him with material information they were obligated to disclose with regard to the value of his stock at the time he was leaving Alper. The Directors have now moved for reconsideration of the court’s denial of their motion for summary judgment on all counts. [See 13 Mass. L. Rptr. 736] As the Directors and Lewenberg have submitted additional factual material to the court in conjunction with the Directors’ present motion, the court will treat it as a renewed motion for summary judgment.
BACKGROUND
The following undisputed facts underlie the Directors’ original summary judgment motion. Alper was a local food brokerage business incorporated under Massachusetts law. Alper’s shares were distributed only to key employees, numbering less than fifty individuals. The Directors collectively owned 51% of Alper while Lewenberg, who worked for Alper in various capacities from 1970 until April 1999, owned approximately 3.5%, in the form of 2,600 shares.
The mid-to-late 1990s saw a substantial transformation of the food brokerage industry. Smaller entities, like Alper, tended to consolidate into or affiliate with regional or national brokerage firms. The effect of industry-wide consolidation on Alper’s future was a topic at the company’s annual shareholders’ meeting in December 1998. With Lewenberg in attendance, the Directors acknowledged that the industry was changing, that some investigation into the possible consequences for Alper had already occurred, and that the Directors would continue to explore new opportunities. The Directors made no further disclosures to Alper’s shareholders on this subject until after Lewenberg announced his plans to leave the company.
During their January 1999 board meeting, the Directors decided to approach large food brokerage firms regarding an affiliation with Alper. On March 31, 1999, the day Lewenberg announced his resignation, the Directors were exploring the possibiliiy of affiliating with Acosta or Advantage, two larger food brokerage firms. A meeting with Acosta took place on April 1, 1999. It did not conclude with an agreement. On April 12, 1999, Acosta presented Alper with a proposal that the Directors found more acceptable. Negotiations continued until April 21, 1999, when Alper’s stockholders accepted an agreement by which Acosta would acquire Alper.
Lewenberg’s resignation on March 31, 1999 triggered a provision in Alper’s Articles of Organization which required him to offer his stock to the corporation for purchase in accordance with a predetermined pricing formula. The company elected to purchase Lewenberg’s stock. Plugging in the pricing formula, Alper paid Lewenberg $80.00 per share for a total of $208,000. *508 Following the acquisition by Acosta, all of Alper's shareholders received a payout of $600.00 per share. Thus, Lewenberg’s stock was purchased for over $1,300,000 less than he would have received under the terms of the payout implemented after the Acosta acquisition.
On the basis of these undisputed facts, this Court determined that Alper fell within the definition of a closely held corporation as described in Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578 (1975).[1] The consequence of this holding was that the fiduciary duty the Directors owed Lewenberg was “substantially the same fiduciary duty in the operations of the enterprise that partners owe to one another . . . [one of) utmost loyalty and good faith.” Id. at 593. While stockholders may not “act out of avarice, expediency or self interest,” id., the duty owed does not obligate the majority to make minute-by-minute disclosures. Thus, even closed corporations “have a large measure of discretion, for example, in declaring or withholding dividends, deciding whether to merge or consolidate, establishing the salaries of corporate officers, dismissing directors with or without cause, and hiring and firing corporate employees.” Wilkes v. Sunnyside Nursing Home, Inc., 370 Mass. 842, 851 (1976).
Having established the nature of the duty that ran to Lewenberg as a stockholder as opposed to an employee, the court turned to the temporal aspect of that duty. Both Lewenberg and the Directors characterized the tender of Lewenberg’s stock as a necessary incident of his resignation. However, Alper’s Articles of Organization, Amendment Schedule A, section 3(b), which is applicable to the transaction, does not support the view that the parties were engaged in an automatic purchase upon resignation procedure. Section 3(b) contemplates various contingencies, ranging from Alper’s refusal to repurchase the stock to its repurchase within fifteen days of written notice. Neither party submitted evidence that allowed the court to determine when Lewenberg ceased to be a stockholder. Therefore, the court denied the Directors’ summary judgment motion on October 23, 2001 [13 Mass. L. Rptr. 736).
Both parties have augmented the factual record since that decision was issued. Once again, they substantially agree on the facts but not on their consequences. On March 31, 1999, the day Lewenberg announced his resignation, he requested, among other things, that he be allowed to retain his Alper shares. During a meeting with Doyon on April 6, 1999, Lewenberg was informed that he would be required to tender his shares on April 23, 1999, his last official work day. Additionally, Lewenberg was asked to deliver the shares to Doyon prior to April 16, 1999, since Lewenberg was leaving for an overseas vacation on that date. Lewenberg complied with these requests and turned over his shares to Doyon prior to April 16, 1999. However, in endorsing them over to Alper, Lewenberg dated each endorsement “April 23, 1999.”
The Directors contend that they are entitled to summary judgment because Lewenberg waived the requirement of written notification regarding his stock transfer and that G.L.c. 106, §8-302(a) mandates the conclusion that Lewenberg’s interest in Alper ended when he gave the endorsed stock certificates to Doyon prior to April 16, 1999. Lewenberg asserts that he never waived the written notice provision and that post-dating his stock endorsements continued his shareholder status to April 23, 1999.
DISCUSSION
I.
The parties agree that the Directors never provided Lewenberg with the written notice required by the company’s Articles of Organization. The Directors contend that the parties’ conduct during the period when Lewenberg was winding up his involvement with Alper constituted a waiver of that condition. Lewenberg counters with the assertion that the company’s purchase of his shares is invalid because the Directors failed to provide written notice.
Typically, the agreed upon provisions of a contract will be enforced. However, conditions in a contract may be waived. Church of God in Christ, Inc. v. Congregation Kehillath Jacob, 370 Mass. 828, 834 (1974). A condition may be waived by a party’s words and conduct. McCarthy v. Tobin, 429 Mass. 84, 88-89 (1999). The construction of a waiver is determined by rules of reasonableness. McCarthy, 429 Mass. at 89. While the issue of waiver is ordinarily a question of fact, it becomes a question of law when the parties agree on the facts. McCarthy, 429 Mass. at 88 n.5.
On the undisputed facts presented in this case, the Court concludes that Lewenberg waived the necessity of the written notice provision of Alper’s Articles of Organization. When told that the Directors would insist on purchasing his shares, Lewenberg did not indicate that he would await further communications from Alper in this regard. Once Doyon informed him of the Directors’ intentions, Lewenberg acted as if he had received adequate notice and acted accordingly. Lewenberg consistently followed this course of action from the moment he was told of the Directors’ plans until after he left the company. These facts support the conclusion that Lewenberg waived the written notice provision, particularly as he did not lose substantive rights as a result of the waiver. Both parties’ reasonable expectations under the terms of the governing agreement were preserved. In this regard, it is significant that there is no evidence that the Directors altered their conduct as a result of Lewenberg’s waiver. The Directors did not gain any advantage by construing Lewenberg’s assent to verbal notice as a waiver of the written notice requirement. Therefore, nothing that either the Directors or Lewenberg did threatened their respective positions in the sale of Lewenberg’s shares. Waiver of a procedural condition is not unreasonable in this context.
*509 II.
The Directors invoke G.L.c. 106, §8-302(a), which reads, in pertinent part; “. . . upon delivery of a certified or uncertified security to a purchaser, the purchaser acquires all rights in the security that the transferor had or had power to transfer." The Directors claim that “purchaser” as it appears in the statute, is synonymous with “transferee.” Therefore, according to the Directors, all of Lewenberg's rights embodied in his shares, and all the Directors’ duties owed to Lewenberg as a shareholder, ended when Lewenberg delivered the stock certificates to Doyon prior to April 16, 1999.
Lewenberg contends that he remained an Alper shareholder until April 23, 1999, the date he endorsed on the stock certificates when he gave them to Doyon. Lewenberg’s position draws support from G.L.c. 106, §8-302(b) which reads, “A purchaser of a limited interest acquires rights only to the extent of the interest purchased.” Under Lewenberg’s view, even if the Directors could be viewed as purchasers, they purchased a limited interest, since by post-dating the stock certificates to April 23, 1999, Lewenberg did not convey his entire interest in Alper stock prior to that date.
This controversy places the court in precisely the position it found itself when it denied the defendants’ earlier motion for summary judgment. The dispute over when the Directors’ fiduciary duties to Lewenberg ended is material because the timing of Lewenberg’s decision to resign is as much an investment decision as a career choice. To the extent that the Directors had essentially partnership duties to Lewenberg, they were obligated to inform him of any changed circumstance that might affect his investment decision unless their conduct was protected by their adherence to a greater business purpose which could not be accomplished in a manner less harmful to Lewenberg. The court concludes that it is an appropriate matter for a fact finder to determine when the Directors’ fiduciary duties to Lewenberg ended, what the effect of the predetermined stock pricing formula had on this transaction, and whether the Directors’ actions were appropriate in terms of their management discretion.
ORDER
For the foregoing reasons, the Defendants’ Motion for Reconsideration of the Court’s denial of summary judgment is DENIED.

 A closely held corporation is one that is “typified by (1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority participation in the management direction and operations of the corporation.” Donahue v. Rodd Electrotype, 367 Mass. at 586.