JOAQUIM F. TORRAO *vs.* EDWARD L. COX & another.[1]

No. 87-781.

Hampden. March 8, 1988. — July 28, 1988.

Present: GRANT, ARMSTRONG, & KASS, JJ.

*Mistake. Contract,* Sale of real estate, Mistake, Reformation, Rescission. *Deed,* Reformation, Rescission. *Agency,* Attorney at law, Scope of authority or employment. *Real Property,* Sale.

In an action seeking reformation of a deed, the plaintiff, who had limited ability to speak, and no ability to read, English, and who had signed a deed mistakenly conveying more land than he had agreed to convey, was entitled to equitable relief; the plaintiff's attorney, attending the closing in the plaintiff's absence, had no authority to bind the plaintiff by delivering the deed with the mistaken description after the buyers had alerted him to the possible error. [250-252]

CIVIL ACTION commenced in the Superior Court Department on December 11, 1984.

The case was heard by *Raymond R. Cross,* J.

*Olivia O. Johnston* for the defendants.

*Marshall T. Moriarty,* for the plaintiff, submitted a brief.

ARMSTRONG, J. The plaintiff brought this action for reformation of a deed whereby he conveyed to the Coxes more land than he had intended. Finding that the full extent of the land conveyed was understood by the Coxes and by the plaintiff's attorney (who had prepared the deed) at the time of the closing, the trial judge denied relief for want of mutuality of any mistake. The plaintiff appealed.

The subsidiary findings, not disputed in this appeal, disclose the following scenario. The plaintiff's native tongue is Portuguese; he has limited ability to speak, and no ability to read, English. Wishing to sell a house and lot at 78 Grandview

---

[1] Margaret L. Cox.

Avenue, Ludlow, he approached a Portuguese-speaking real estate broker, one Pires, who put the property on the market. Seventy-eight Grandview Avenue is a rectangular lot, 120 feet (frontage) by 90 feet. It backs on other property owned by the plaintiff, also measuring 120 feet by 90 feet, and fronting on Wilno Avenue (which runs parallel to Grandview Avenue). Half of the Wilno Avenue property, a parcel 60 feet by 90 feet, known as "parcel II",[2] had been conveyed to the plaintiff in 1979 when he purchased the Grandview Avenue property (the two properties had apparently been in common ownership since 1920). How he acquired the other half of the Wilno Avenue property is not disclosed.

At the outset there was no uncertainty concerning the property being offered for sale. Seventy-eight Grandview Avenue was listed in the multiple listing service as measuring 120 feet by 90 feet, and the testimony at trial indicates that the Coxes were fully aware of those measurements and of the fact that the Grandview Avenue property did not extend all the way to Wilno Avenue. The plaintiff told them that he intended to build a house on Wilno Avenue, although he was vague about the extent of his land holding on that street. The Coxes seem to have been uncertain where the rear lot line lay and to have imagined that its 90 foot depth took the lot further back than it did. They were also concerned because access to the garage on the Grandview Avenue property had been from Wilno Avenue, by a dirt drive or simple tire tracks across the lawn, rather than from Grandview Avenue, which had a steep slope and no curb cut. Several times the Coxes tried to discuss with the plaintiff their need for access from Wilno Avenue to the garage, and the plaintiff seems to have responded, cheerfully if evasively, that he owned lots of land back there. The Coxes signed the purchase and sale agreement aware, as they admitted, that the problem of vehicular access had not been resolved. They arrived at the closing intending to press the issue there.

---

[2] The depth of parcel II was 90 feet. Its frontage on Wilno Avenue was 60 feet, as was its rear lot line abutting the Grandview Avenue property.

Meantime, the broker, Pires, after the plaintiff accepted the Coxes' offer, undertook to draft the purchase and sale agreement and telephoned the Ludlow board of assessors for a property description. The result was a description in this form: "one family dwelling-78 Grandview Avenue Ludlow, Mass. County of Hampden, as more particularly described in a Deed dated 3/9/1981 and recorded in the Hampden County Registry of Deeds in Book L.C. 19965 Page [blank] or Land Court Certificate #19965." The property described in Land Court certificate #19965 included both the 120 feet by 90 feet parcel on Grandview Avenue ("parcel I") and the half of the Wilno Avenue property ("parcel II") over which the dirt driveway ran. Without referring to the certificate, of course, a reader would not realize that the purchase and sale agreement described more property than had been included in the original listing. After the purchase and sale agreement was signed, Pires had the plaintiff deliver it to an attorney who was to prepare the deed. The attorney, assuming that the property to be sold was correctly described in the purchase and sale agreement, drafted a deed reflecting the description in the Land Court certificate. On its face it described parcel I and parcel II and their respective dimensions. The deed was apparently never seen by Pires but only by the plaintiff, who could not read English. For some reason the plaintiff did not attend the closing, nor did Pires. The plaintiff signed the deed in advance, and it was brought to the closing by the attorney.

The Coxes brought up the unsettled question of access to the garage from Wilno Avenue at the closing. Edward Cox also noticed the plot plan showed an L-shaped property and said he thought the property was supposed to be rectangular. The attorney for the bank that was to furnish the Coxes' purchase money suggested delaying the closing. The attorney for the plaintiff, however, saw no problem. The description in the deed matched that in the Land Court certificate and in the purchase and sale agreement. The Coxes' garage access was assured. The sale closed, and several months went by before

the parties' conflicting uses of parcel II brought the problem to light and the plaintiff brought this action for reformation.[3]

There is no question that, prior to the events of the closing, the plaintiff would have been entitled to reformation of the purchase and sale agreement based on a scrivener's error, unknown to either party. *Century Plastic Corp.* v. *Tupper Corp.*, 333 Mass. 531, 536 (1956). *American Oil Co.* v. *Cherubini*, 351 Mass. 581, 586-588 (1967). It is undisputed that both the plaintiff and the Coxes thought at the time they executed the agreement that its subject was only parcel I, the 120 foot by 90 foot lot at 78 Grandview Avenue. "[A] mistake in the legal effect of a description in a deed . . . may be relieved against, upon proper proof." *Canedy* v. *Marcy*, 13 Gray 373, 377 (1859), quoted in *Reder* v. *Kuss*, 351 Mass. 15, 17 (1966). *Mickelson* v. *Barnet*, 390 Mass. 786, 791 (1984). The question is whether the discovery prior to closing that parcel II was included in the deed and the purchase and sale agreement precluded reformation based on mutual mistake.

At the time, prior to the closing, when Torrao signed the deed, he was still unaware of the error. The fact that the Coxes became aware of the enlarged description prior to closing (although they were not sure that the enlargement was not intentional) does not by itself preclude reformation of the deed. As a general rule, reformation of an instrument may be warranted not only by fraud or by mutual mistake, but also by a mistake of one party (here, Torrao) which is known to the other party (here, the Coxes). See *Mates* v. *Penn. Mutual Life Ins. Co.*, 316 Mass. 303, 306 (1944); *Wareham Sav. Bank* v. *Partridge*, 317 Mass. 83, 84 (1944). Under the rule stated in Restatement (Second) of Contracts § 161(c) (1981), reformation is justified if the party knowing of the mistake fails to make it known to the mistaken party; but the result is based on analogy to mis-

---

[3] The plaintiff also sought damages for emotional distress caused by the Coxes' allegedly outrageous conduct, but he raises no issue in his brief concerning the denial of relief in this respect. The Coxes counterclaimed for breach of warranty and fraudulent misrepresentations, the substance of which need not be gone into because the Coxes claimed no appeal from the judgment.

representation by silence,[4] an analogy not apt here, where the Coxes spoke up before closing so as to alert the plaintiff's counsel to the possible problem. Under the rule stated in § 153 of the Restatement, "[w]here a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake . . . and . . . (b) the other party had reason to know of the mistake. . . ."[5] If the term "basic assumption" normally refers to the external factual situation with respect to which the parties are contracting, there is no reason the principle should not apply with equal force in case of scrivener's error. It has been said more generally that "[i]f one of the parties mistakenly believes that the writing is a correct integration of that to which he had expressed his assent and the other party knows that it is not, reformation may be decreed." Corbin, Contracts § 614, at 730 (1960), citing, inter alia, *Moors* v. *Bigelow*, 158 Mass. 60 (1893).

That principle governs the present case and calls for equitable relief, unless the finding that Edward Cox alerted the plaintiff's attorney to the problem prior to the passing of papers requires a different result. If the plaintiff had attended the closing and had been alerted to the impact of the deed, he might well have been bound if he completed the closing; there would have been no mistake or fraud to support rescission or reformation, but only an assented-to modification of the original agreement. The decisive question, then, is whether the plaintiff's attorney was acting as his agent, so as to bind the plaintiff, in electing to complete the closing after being alerted to the possible problem.

---

[4] "A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only: . . . (c) where he knows that disclosure of the fact would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part." See also § 155, comment b, second par.

[5] "Voidable" in this rule suggests rescission, as opposed to reformation, but § 158 makes clear that courts are flexible in framing appropriate equitable relief in any situation governed by § 153.

Unlike the broad authority impliedly entrusted to an attorney in the conduct of litigation, see *Burt* v. *Gahan*, 351 Mass. 340, 342-343 (1966), an attorney's implicit authority in contract dealings is more circumscribed. He has (absent express authorization) no power to bind his principal by his assent to substantial modifications in the contract terms. See *Hubbard* v. *Shaw*, 12 Allen 120, 123 (1866); *Smith* v. *Abbott*, 221 Mass. 326, 329-330 (1915); *See* v. *Norris*, 234 Mass. 345, 348-349 (1920); *Rossi* v. *School Comm. of Everett*, 354 Mass. 461, 464 (1968). Contrast *Johnson* v. *Kelley*, 342 Mass. 724, 727 (1961) (attorney for party to purchase and sale agreement had apparent authority to agree to change in closing date). Even in the context of litigation, an attorney does not have implied authority by virtue of that representation alone to compromise the substantial rights of his client. See *Precious* v. *O'Rourke*, 270 Mass. 305, 308 (1930); *DeSantis* v. *Massachusetts Bonding & Ins. Co.*, 289 Mass. 315, 321 (1935); *Hubbard* v. *Peairs*, 24 Mass. App. Ct. 372, 377-378 (1987). The attorney's role at the closing was, basically, to transfer the deed upon receipt of the purchase price. He was not authorized to assent to the modification of the original agreement that through mistake had found its way into the deed. His assent did not bind the plaintiff. Nothing in the events that transpired after the closing raises any question of ratification by the plaintiff. Contrast *Hamilton* v. *Coster*, 249 Mass. 391, 395-396 (1924).

The plaintiff, thus, is entitled to relief in equity. The appropriate form of relief should reflect the fact that the Coxes were apparently prepared not to complete the closing unless they were given some form of access by vehicle from Wilno Avenue. In the circumstances we think that the judgment should be for reformation of the deed to exclude parcel II unless, within thirty days after rescript, the Coxes by motion should elect to rescind the purchase altogether. In that event, a judgment should be entered ordering rescission, with an award to the plaintiff of such damages, if any, as he would have been entitled to if the Coxes had declined to purchase the Grandview Avenue property on the day of the closing. Compare *Keene* v. *Demelman*, 172 Mass. 17, 23 (1898).

Torrao *v.* Cox.

The judgment (docket entry no. 19) is reversed, and the case is remanded for the entry of a new judgment consistent herewith.

*So ordered.*