## Nissan Automobiles of Marlborough, Inc. *vs.* Allen M. Glick.

No. 03-P-1331.

Middlesex. June 16, 2004. - October 18, 2004.

Present: Perretta, Greenberg, & Beck, JJ.

*Contract,* Lease of real estate, Option, Construction of contract, Reformation, Mistake. *Mistake. Damages,* Interest. *Statute,* Construction. *Consumer Protection Act,* Unfair or deceptive act.

In an action where the defendant lessor sought reformation of an option to purchase provision contained in a lease agreement, the trial judge properly found that the contested provision was a unilateral mistake on the defendant's part and applied the correct standard in determining that the mistake did not warrant reformation of the provision, i.e., that there was insufficient evidence to conclude that the plaintiff knew or should have known of the defendant's unilateral mistake at the time the lease was signed [305-308]; further, the defendant failed to demonstrate that the judge's conclusions were influenced by an allegedly erroneous finding of fact [308-309], or that the judge improperly considered other factors that were irrelevant to the issue before the court [309].

In an action brought by a plaintiff seeking to exercise a purchase option in a lease agreement, the trial judge correctly found that the plaintiff's first attempt to exercise the option did not comply with the strict terms of the agreement and was therefore invalid. [309-310]

In the circumstances of a civil action brought by a plaintiff seeking to exercise a purchase option contained in a lease agreement, the judge properly declined to award statutory interest under G. L. c. 231, § 6C, on rental payments made by the plaintiff after the defendant lessor refused to convey the premises in accordance with the terms of the option. [310-312]

In an action brought against a defendant lessor for his refusal to convey leased property to the plaintiff lessee under the purchase option of a lease agreement, the trial judge properly dismissed the plaintiff's claim under G. L. c. 93A, § 11, where the defendant's refusal to convey was a prophylactic action taken in accordance with his earnestly held interpretation of the agreement and the law, and therefore was not an unfair or deceptive act under G. L. c. 93A. [312-313]

Civil action commenced in the Superior Court Department on February 3, 1998.

The case was heard by *Janet L. Sanders*, J.

*Sarah C. Kellogg* for the plaintiff.

*Harry L. Manion, III*, for the defendant.

GREENBERG, J. On April 24, 1996, George Albrecht, the president of the plaintiff, Nissan Automobiles of Marlborough, Inc. (Nissan), signed a lease agreement to open a Nissan dealership on premises owned by the defendant, Allen M. Glick. After attempting twice to exercise the purchase option in the lease agreement, Nissan filed a complaint seeking a declaratory judgment and specific performance of the option to purchase the premises. Nissan later amended the complaint to include claims pursuant to G. L. c. 93A, § 11, and G. L. c. 231, § 6F. In his answer, Glick counterclaimed, seeking reformation of the agreement due to an allegedly mutual mistake concerning when the plaintiff could exercise the option to purchase. A judge of the Superior Court heard the dispute in a bench trial. She dismissed Glick's claim for reformation and, finding that Nissan's second attempt to exercise the option was valid, ordered specific performance for the plaintiff. Further, she ordered that all rent Nissan paid after Glick refused to convey the premises in accordance with Nissan's second exercise of the option should be credited toward the purchase price of the property. She dismissed Nissan's claims for damages under G. L. c. 231, § 6F, and G. L. c. 93A, § 11.

The parties have cross-appealed. Nissan claims (1) that the judge erred, as matter of law, in ruling that Albrecht's first attempt to exercise the purchase option was invalidly noticed; (2) that the judge should have awarded statutory interest under G. L. c. 231, § 6C, on the rental payments made after the closing date and credited toward the purchase price; and (3) that the judge erred in failing to find that Glick violated G. L. c. 93A, § 11 (and also in declining to award multiple damages and attorney's fees). Glick raises three discrete issues: (1) that the judge applied the wrong legal standard in determining that his unilateral mistake did not entitle him to relief; (2) that the judge made a clearly erroneous finding of fact that amplified her error of law concerning the unilateral mistake; and (3) that she improperly considered whether Glick would realize a profit if the lease were enforced as written.

We have the benefit of careful, detailed, and lucid findings by the Superior Court judge. Such findings are, of course, entitled to deference unless clearly erroneous. *Commonwealth* v. *Source One Assocs., Inc.*, 436 Mass. 118, 124 (2002); Mass.R. Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). The judge's findings are supported by the record; we summarize them.

Glick, a businessman with twenty-five years of experience in the car dealership business, purchased 740 Boston Post Road in Marlborough in 1995 for $746,000. Albrecht, president and majority shareholder of Nissan, wanted to open a Nissan dealership there and was interested in leasing or buying the property.

The two met at Glick's Framingham farm for their first and only face-to-face meeting on April 3, 1996. After the meeting on April 3, 1996, there was no further direct communication between Albrecht and Glick with regard to the lease. Both men understood that there would be no enforceable agreement between them until their lawyers drafted a written lease.

Albrecht's attorney, Robert Holmes, drew up the first draft of the lease agreement and sent it to Glick's attorney, Alan Greenwald, on April 5, 1996. The initial purchase option clause was on the first page in a section entitled "Summary of Basic Terms." It conformed to Albrecht and Glick's discussion and read as follows:

> "*Purchase Option*: Tenant shall have the right to purchase the Premises for a purchase price of One Million One Hundred Thousand Dollars ($1,100,000) *at the end of the tenth year of the term of the Lease upon notice of exercise to Landlord given within six (6) months prior to the end of said tenth year*" (emphasis added).

Upon receiving the first draft of the lease, Greenwald added handwritten notes detailing changes throughout the document meant to clarify its terms but not to change them substantively. On April 12, 1996, he sent a draft back to Holmes that included these changes. This draft included the language in controversy in the "Summary of Basic Terms" on page one, which had been modified to read as follows:

> "*Purchase Option*: Lessee shall have the right to exercise an option to purchase the Premises for a purchase price of

One Million One Hundred Thousand Dollars ($1,100,000) which can be exercised *only within ten (10) years* from the Commencement Date of this Lease upon notice to LESSOR of exercise of option *given at least six (6) months prior* thereto" (emphasis added).

The new language effectively required that the option be exercised within the first ten years of the lease, not the second ten years, as Albrecht and Glick had discussed. The parties did not discuss this change to the language at any time. They exchanged additional drafts of the lease several times before settling on a version that satisfied them both. Nevertheless, the erroneous language in the purchase option clause remained intact through the drafting process and was on the first page of the lease agreement when both parties signed it.[1]

The judge credited Glick's testimony that despite multiple opportunities to review the lease drafts containing the altered purchase option language, Glick did not catch his lawyer's mistake. She found that he simply assumed the drafts and the lease reflected what he and Albrecht had discussed at the April 3, 1996, meeting: that the option to purchase would be exercisable after the first ten years. Unbeknownst to Albrecht or Holmes, Glick wanted to put off sale of the property for tax reasons.

On September 10, 1997, Albrecht sent a letter to Glick notifying him that Albrecht intended to exercise Nissan's option to purchase and that the effective date of exercise was February 18, 1998. However, due to concerns that the September 10, 1997, notice of intent to exercise might not be valid, Albrecht sent another such letter to Glick on March 6, 2000, setting an effective date of September 15, 2000. Glick refused to transfer the property on either occasion.

1. *Reformation of the option provision.* On the basis of the plain but mistaken language of the option provision that Glick's attorney, Greenwald, modified from the initial draft and which remained in the version of the agreement that Glick, himself,

---

[1]The erroneous language was also included on the front page of two other signed documents, the sole director's vote, a one-paragraph document requested by Greenwald and signed by Albrecht on May 3, 1996, and the notice of lease and option to purchase, signed by Albrecht, Glick, and Greenwald on May 22, 1996, and filed with the registry of deeds.

signed, the judge ruled that the contested option provision was a unilateral mistake on Glick's part, not a mutual one. She also found that while Glick had testified to several reasons why the change in the option language did not reflect the original intent of either party, there was insufficient evidence to conclude that Albrecht knew or should have known of the mistake at the time he signed the lease.

On appeal Glick does not quarrel with the judge's finding that the mistake was unilateral. Rather, he contends that the judge applied the wrong standard in determining whether the mistake warranted reformation so that the option could not be exercised until the end of the ten-year term of the lease. Specifically, he argues that Albrecht had reason to know of Glick's mistake.

Reformation is an appropriate remedy for an agreement containing a mistake if the mistake is mutual or was made by one party (unilateral) such that the other party knew or had reason to know of it.[2] See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 756 (1993); *First Safety Fund Natl. Bank* v. *Friel*, 23 Mass. App. Ct. 583, 588 (1987); *Torrao* v. *Cox*, 26 Mass. App. Ct. 247, 250-251 (1988); Restatement (Second) of Contracts § 153 (1981). A party seeking recovery for a unilateral mistake must present full, clear, and decisive proof that a mistake occurred, see *Polaroid Corp.* v. *Travelers Indem. Co.*, *supra*, and that the other party knew or had reason to know of the mistake.[3] See *First Safety Fund Natl. Bank* v. *Friel*, *supra*. If these conditions are met, a court may choose to reform the agreement at its discretion. See *Mickelson* v. *Barnet*, 390 Mass. 786, 791-792 (1984); *Torrao* v. *Cox*, *supra* at 252; 2 Farnsworth, Contracts § 7.5, at 244-245 (2d ed. 1998).

In the instant case, the judge correctly found that there was proof of mistake, demonstrated through the evolution of the purchase option language and Glick's testimony that he

---

[2] "If the misunderstanding is due to the fault of one party and the other party understands the transaction according to the natural meaning of the words or other acts, both parties are bound by that meaning." 13 Williston, Contracts § 1578, at 513 (3rd ed. 1970).

[3] Restatement (Second) of Contracts § 153 (1981) also states that voiding the contract may be an appropriate remedy in an instance of unilateral mistake if enforcement of the contract would be unconscionable.

remained unaware of the change to the provision that his attorney made when reviewing multiple drafts of the lease agreement.

Glick's appeal challenges the Superior Court's finding that he did not meet the second criterion by clearly demonstrating that Nissan knew or had reason to know of the mistake. His argument is that while the judge stated the correct standard for deciding whether to grant reformation in an instance of unilateral mistake, she then applied that standard incorrectly. In our assessment, the judge's application of the correct standard resulted in a finding of fact, one with which Glick disagrees. We will not set aside findings of fact unless they are clearly erroneous. *Commonwealth* v. *Source One Assocs., Inc.,* 436 Mass. at 124; Mass.R.Civ.P. 52(a).

Our careful review of the record indicates that Glick did not present a shred of evidence, much less "full, clear and decisive proof," that Albrecht knew Glick was mistaken about the terms of the purchase option. *Mickelson* v. *Barnet, supra* at 793, quoting from *Stockbridge Iron Co.* v. *Hudson Iron Co.,* 107 Mass. 290, 317 (1871). See *Covich* v. *Chambers,* 8 Mass. App. Ct. 740, 747-748 & n.12 (1979). In addition, there was no evidence that Albrecht ever attempted to conceal the language of the purchase option or took any action to prevent Glick from discovering it. On this record there is simply no factual basis to find that Albrecht or Holmes knew, or even suspected that Glick believed, that the option provision drafted by his attorney said anything other than what its plain and unambiguous language expressed — that the purchase option could "be exercised only *within* ten (10) years from the commencement date" of the lease (emphasis added).

The circumstances in which a party may void a contract on the basis of a unilateral mistake are limited: "if he does not bear the risk of the mistake . . . and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake." Restatement (Second) of Contracts § 153. Here, Glick has not called to our attention anything that persuades us that Albrecht had reason to know of the mistake. With respect to his theory of unilateral mistake, the

judge did not err when she dismissed Glick's claim for reformation and ordered specific performance for Nissan.

2. *Martell's notes.* George Martell, the vice president and chief operating officer of Woburn Foreign Motors, another dealership owned by Albrecht, attended the April 3, 1996, meeting and took notes, which he later copied and gave to both parties. The notes included the basic terms of the discussed lease, including the phrase, "Option to purchase for $1.1 million after year 10 with 6 months notice of intent." Glick contends that an incorrect factual finding by the judge allowed her to dismiss prematurely a point central to Glick's argument, i.e., that Martell's notes reflected the essence of the deal as negotiated by the parties and that the parties meant for every term in the notes to appear in the lease. The judge's allegedly erroneous finding, that a provision regarding two months' free rent had changed from the time it was memorialized in Martell's notes to when it appeared in the lease, supposedly permitted her to find more readily that the change in the option language was not, in and of itself, adequate to give Albrecht "reason to know" of a mistake in the language.

The argument is strained. Moreover, we note that the judge's finding on this point was not clearly erroneous. Martell's notes simply stated, "60 days rent free occupancy after Nissan approval." The lease agreement included other provisions that, as Glick points out in his appellate brief, allowed for *at least* sixty days rent free and ultimately provided one hundred and twenty days rent free. Such a result could be seen as inconsistent with Martell's notes, and therefore, the judge's finding is not clearly erroneous.

More to the point, Glick suggests that because all the other aspects of Martell's notes were included in the lease, and because Martell's notes included the details of the purchase option that Glick intended to include, the judge must infer that Nissan should have known that the erroneous option language that was ultimately included in the lease agreement was a mistake. However, this argument is undercut by the fact that attorney Holmes drafted the original purchase option language in accord with the specifications in Martell's notes only to have that language changed by Glick's attorney, Greenwald, and

subsequently approved multiple times by Greenwald and by Glick himself. The erroneous option language, appearing in different drafts of the lease, was sufficiently obvious in its meaning and its placement on the document's first page that the judge reasonably could have inferred that Albrecht did not have reason to know of the mistake. Thus, even if the judge had made a clearly erroneous finding with regard to the rent provisions, that hypothetical mistake would not alter our conclusion.

3. *Profit from sale of 740 Boston Post Road.* Glick also argues that the judge should not have reached a conclusion whether Glick would have realized a profit from the purchase option transaction, stating "[w]hether, in the judge's opinion, Glick made out well enough was irrelevant" to the issue before the court.

In the abstract that may be the case, but Glick overlooks one of the instances in which a contract incorporating a unilateral mistake can be reformed: where enforcing the agreement as written would be unconscionable. *First Safety Fund Natl. Bank* v. *Friel,* 23 Mass. App. Ct. at 588; Restatement (Second) of Contracts § 153. See *Covich* v. *Chambers,* 8 Mass. App. Ct. at 750 n.13. Once the judge concluded that the mistake was unilateral, she had to consider all possible avenues through which the agreement might be reformed. In considering whether enforcement of the agreement as written would be unconscionable, it was logical to consider how Glick would fare were the provision enforced as written. Another judge might have found differently, but addressing this factor was not irrelevant to the ultimate issue, and therefore, it was not improperly considered.

4. *Nissan's cross appeal: exercise of the option.* Having established that the Superior Court properly dismissed Glick's claim for reformation, we turn to Nissan's cross appeal regarding Albrecht's first attempt to exercise the purchase option. His first letter of intent to exercise, dated September 10, 1997, set an effective date of February 18, 1998, which was less than six months after September 10, 1997. Because this notice of intent to exercise the option to purchase did not comport with plain language of the purchase option clause in the lease agreement, the judge found the notice invalid. Nissan disagrees and argues that it was effective because the closing would have taken place more than six months after September 10, 1997.

We disagree. The method by which an option to purchase is to be exercised must be contained in the option agreement and is to be determined by the language of the option provision. See *Loitherstein* v. *International Bus. Machs. Corp.*, 11 Mass. App. Ct. 91, 96 (1980) (denying exercise of option to terminate lease because lessee did not strictly comply with literal terms of option provision); *Roberts-Neustadter Furs, Inc.* v. *Simon*, 17 Mass. App. Ct. 262, 269 (1983) (finding lessee properly exercised option to purchase by complying with literal language of option, thus specific performance appropriate but for complicating circumstances); *Cadillac Auto. Co. of Boston* v. *Stout*, 20 Mass. App. Ct. 906 (1985) (holding letter of exercise ineffective for failure to comply with strict terms of option language); Talty, Talty & Braunstein, Methods of Practice § 2:9, at 40 (4th ed. 2000).

Applying this rule to Nissan's cross appeal with respect to its September 10, 1997, notice of intent to exercise, we need only look to the plain language of the purchase option in the signed lease agreement. It reads:

> "*Purchase Option*: Lessee shall have the right to exercise an option to purchase the Premises for a purchase price of One Million One Hundred Thousand Dollars ($1,100,000) which can be exercised *only within ten (10) years* from the Commencement Date of this Lease upon notice to LESSOR of exercise of option *given at least six (6) months prior* thereto" (emphasis added).

In the context of those parameters, Albrecht's letter of notice of intent to exercise, dated September 10, 1997, and specifying an effective date of February 18, 1998, was not valid.[4] Six months after September 10, 1997, is March 10, 1998. February 18, 1998, is *less than* six months after the date of notice of intent to exercise. Therefore, Nissan's first attempt to exercise the option did not comply with the strict terms of the purchase option and was correctly found invalid by the judge.

5. *Interest on rent payments.* Although Nissan's September

---

[4]The September 10, 1997, letter reads: "We hereby give six (6) month's [*sic*] *notice pursuant to Section 8 of the summary of Basic Terms of the Lease . . . dated April 24, 1996, of exercise of the Purchase Option. The effective date of exercise is, therefore, February 18, 1998."*

10, 1997, letter was inadequate to trigger its option to purchase, Glick concedes that Nissan's March 6, 2000, letter of notice of intent to exercise, which set the date of exercise as September 15, 2000, was valid under the lease agreement. If the option had been executed pursuant to the terms of the lease agreement, Nissan would have acquired the property at an October 30, 2000, closing. Therefore, the judge correctly ordered that Nissan's rent payments from October 30, 2000, to the present should be credited toward the purchase price.

Nissan argues that the judge erred in deciding not to order Glick to pay interest on those rent payments as further credit toward the purchase price, money it argues Glick owes under G. L. c. 231, § 6C.[5] In the circumstances of this case, we conclude that the judge correctly decided not to award interest to Nissan.

On its face, the statute only provides for prejudgment interest in instances where damages are awarded. Because declaratory judgment and specific performance are remedies at equity, the awarding of interest on the basis of this statute in this case is certainly not automatic. As was noted by the judge, "[t]he rent payments are not damages so much as credits which reduce the purchase price."

Further, the Supreme Judicial Court has interpreted this statute narrowly, reflecting concerns that liberal awarding of prejudgment interest could result in a windfall for the recipient, essentially functioning as punitive damages. *Cahill* v. *TIG Premier Ins. Co.*, 47 F. Supp. 2d 87, 90-91 (D. Mass. 1999), citing *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 841 (1986). Given these concerns, the judge construed the statute properly. She correctly determined that Nissan ultimately did not lose the use of the money paid in rent, as it would not have had use of that money if it had purchased the property according to the terms of the purchase option.

Given the equitable nature of the remedies sought in this

---

[5] "In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand." G. L. c. 231, § 6C, as amended by St. 1982, c. 183, § 3.

case, the narrow scope of this statute, and the fact that the funds Nissan used to make rent payments would not likely have been available to Nissan had the purchase of the property proceeded, Nissan's request for interest pursuant to G. L. c. 231, § 6C, was properly denied.

6. *Unfair and deceptive act claim.* Nissan also appeals from the judge's dismissal of its G. L. c. 93A, § 11, claim.[6] To recover under this statute, Nissan must demonstrate that Glick used an "unfair method of competition or an unfair or deceptive act" in the conduct of commerce. G. L. c. 93A, § 11. Nissan's claim is negated by the judge's unchallenged factual finding that Glick did not catch the mistake his lawyer made and did not intend to have the purchase option read as it did and, therefore, had genuine reason to seek relief under the doctrine of mistake.

Given Glick's belief that the erroneous purchase option language could be reformed by the court, his refusal to convey the property under the purchase option of the signed lease agreement was not, as argued by Nissan, "an attempt to avoid a clear and unequivocal contractual obligation to sell plaintiff the property." To the contrary, it was an prophylactic action taken in accordance with his earnestly held interpretation of the document and the law. As such, it was not an "unfair or deceptive act" under G. L. c. 93A and Nissan's claim was properly dismissed by the Superior Court. G. L. c. 93A, § 11. See *Massachusetts Employers Ins. Exchange* v. *Propac-Mass, Inc.*, 420 Mass. 39, 42-43 (1995) (in deciding questions of unfairness

---

[6]"Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use . . . of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . . may . . . bring an action in the superior court . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

". . .

"Said damages may include double or treble damages, attorneys' fees and costs.

"If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use . . . of the method . . . was a willful or knowing violation of said section two."

under G. L. c. 93A, court focuses on "the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors").[7]

*Judgment affirmed.*

---

G. L. c. 93A, § 11, as amended through St. 1986, c. 363, § 2.

[7]Nissan's request for the costs of the appeal and cross appeal is denied.