Quinlan, Regina L., J.

Introduction

The plaintiff, Joseph Zysk (“Zysk”), filed a complaint for breach of contract and specific performance arising out of the sale of land in Barnstable, Massachusetts. The defendant Samuel Baker (“Baker”), individually and as Trustee of the S.M.B. Clifton Really Trust asserted that there was no contract. The matter was tried without a juiy. For the reasons stated below, Zysk has not sustained his burden in his action for breach of contract and his request for specific performance.

Background

Based upon the credible evidence introduced at the trial, the Court makes the following findings of fact for the purposes of this decision.
The plaintiff, Joseph Zysk, is a contractor who had been in the construction business building approximately thirty (30) homes in Connecticut prior to moving to the Commonwealth some four years ago. In September of 2004, Zysk’s broker, David Dillon of Coldwell Banker, provided him with a copy of a listing for a residential lot located at 151 Clifton Lane in the Hyannisport Village of the Town of Barnstable. The listing price was $165,000.00. According to the listing, a one-bedroom home could be built on the lot.
The lot was owned by the defendant Samuel Baker as trustee of the S.M.B. Clifton Lane Really Trust. The beneficiaries of the trust were Samuel Baker’s adult son and daughter. Baker, age 92, did not handle the sale personally. Rather, he delegated that task to his son Harvey Baker whom he trusted implicitly. Harvey contacted a broker and arranged for the listing of the property. When the listing was satisfactory, Harvey told Baker to sign and he did.
Initially, the asking price was for $195,000.00. However, after the broker made inquiries at the Building Department, the price was reduced to $165,000.00 to reflect that only a one-bedroom house could be built. Zysk was aware of the fact that, according to the listing, any construction was limited to one bedroom. Zysk questioned that limitation and decided to check for himself. Zysk went to the Board of Health and learned that only a portion of the lot was located in a Wellhead Protection Zone. Although only a one-bedroom house could be built on a lot within the Wellhead Protection Zone, Zysk was advised that he might be able to build a home with two or three bedrooms since only a portion of the lot was within the Wellhead Protection Zone. However, the availability of that option would depend on the results of a percolation test in the area outside the Wellhead Protection Zone.
On September 16, 2004, Zysk made an oral offer of $120,000.00 for the lot. That offer was rejected. On September 18, 2004, Zysk signed a written offer for $150,000.00 and gave the signed offer together with a check for $1,000.00 to Dillon, his broker. The offer was faxed to Baker’s broker, Alice Juliano of Realty Executives, without the deposit check of $1,000.00. Juliano then faxed the offer to Harvey Baker in California. [1] Shortly thereafter she received the offer which had been signed by Baker.
The offer provided for a purchase and sale agreement to be executed on or before September 24, 2004. The offer was contingent upon the buyer obtaining a permit from the Town of Barnstable to construct a *676 one-bedroom house. It was also contingent on the buyer being allowed to have a percolation test done at his expense. That test was done on September 20, 2004. As a result of the test, Zysk confirmed that he could build a two-bedroom house. Zysk learned that he was mistaken in believing that only a one-bedroom house could be built.
Juliano informed Baker that the test showed that a two-bedroom home could be built on the lot. She was told that Baker would not sell at the price listed in the offer because a two-bedroom house could be built. Juliano so informed Dillon. On September 21, 2004, the property was back on the market with a higher listing price of $189,900.00.
Zysk, aware that the seller was resistant to the sale after learning that a two-bedroom house could be built, contacted Attorney Sean Eagan and asked him to prepare the purchase and sale agreement. The proposed purchase and sale agreement was drafted and signed by Zysk. Zysk gave Eagan a check for the balance of the deposit. On September 23, 2004, Eagan faxed a copy of the purchase and sale agreement to Juliano. On September 24, 2004, he delivered the purchase and sale agreement together with two checks, one for $1,000.00 (the deposit for the offer), and one for $5,000.00 (the deposit referred to in the proposed purchase and sale agreement).
The purchase and sale agreement was never signed by Baker. On September 28, 2004, Juliano returned the proposed purchase and sale agreement together with the two deposit checks stating “(t]he agreements were not presented in a timely manner.”

Discussion

An offer to purchase real estate executed by both parties to a transaction and containing all the essential terms of the transaction creates binding obligations on the parties. McCarthy v. Tobin, 429 Mass. 84, 88 (1999). In McCarthy, the Supreme Judicial Court held that the disputed offer to purchase contained the essential material terms suggesting that the parties intended to be bound. Id. at 87. The material terms included: (1) a description of the property; (2) the price to be paid; (3) the deposit requirements; (4) limited title requirements; and (5) the time and place for closing. Id. at 85. The offer to purchase also included the language that the offer was a legal document that “created binding obligations.” Id. While this Court agrees that offers to purchase real estate are binding contracts, in this case, the court finds that the offer did not bind Baker because of a lack of consideration. Additionally, there was a unilateral mistake on the part of Baker concerning whether the lot could support only a one-bedroom house of which Zysk knew or had reason to know.

1. Lack of Consideration

In this case, the offer to purchase met the basic McCarthy standards to be a binding obligation. Zysk asserts that his offer to purchase was therefore a legally binding contract. However, there is one key factual difference that warrants a different finding in this case. The plaintiff (buyer) in McCarthy submitted his offer to purchase with the deposit to the defendant (seller). See McCarthy v. Tobin, 44 Mass.App.Ct. 274, 275 (1997), affirmed in McCarthy, 429 Mass. 84 (1999). Here, the offer to purchase states that “(a) $1,000 is paid herewith as a deposit to bind this Offer, [sic] (b) $5,000 is paid as an additional deposit upon execution of purchase and sale agreement as provided for below, (c) $144,000 is to be paid in cash, certified check or bank draft at the time of the delivery of the Deed.” (Emphasis added.) The purchase and sale agreement was to be delivered on September 24, 2004.
While asserting that Baker should fulfill his obligation and sell the lot, Zysk did not pay the required $1,000 to Baker at the time he submitted his offer. He did not send the $1,000 deposit until after Baker had already rejected the offer.[2] In McCarthy the Appeals Court used a “reasonably intelligent person” standard to interpret the offer to purchase. McCarthy, 44 Mass.App.Ct. at 279. Using that standard here, the offer to purchase could only bind Baker upon receipt of the deposit. Baker’s initial acceptance was predicated upon receipt of the deposit referred to in the offer. When Baker later rejected the offer before Zysk paid the deposit, he was not yet bound. To hold otherwise gives Zysk the benefit of the contract despite the fact he had not fully performed his obligation to pay the $1,000 deposit.
Therefore, this Court holds that the offer was not binding because the consideration was not delivered with the offer and was only proffered after Baker rejected the offer.
2. Unilateral Mistake
A contract may be void when one parly is mistaken about a basic assumption on which he made the contract at the time of contracting, and this mistake has a material effect on the agreed exchange of performances that is adverse to him and the other party knew or had reason to know of the mistake. See Polaroid Corp. v. Travelers Indent. Co., 414 Mass. 747, 756 (1993); Torrao v. Cox, 26 Mass.App.Ct. 247, 250-51 (1998); First Safety Fund Nat’l Bank v. Friel, 23 Mass.App.Ct. 583, 588 (1987); Restatement Second on Contracts 151 (1981). “The circumstances in which a party may void a contract on the basis of a unilateral mistake are limited: ‘if he does not bear the risk of the mistake . . . and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake.’ Restatement (Second) of Contracts §153.” Nissan Automobiles of Malborough, Inc. v. Glick, 62 Mass.App.Ct. 302, 307 (2004). “A parly seeking recovery for a unilateral mistake must present full, clear, and decisive proof that a mistake occurred . . . and that the other party knew *677 or had reason to know of the mistake ... If these conditions are met, a court may choose to reform the agreement at its discretion.” Id. at 306.
Baker believed that only a one-bedroom house could be built on the properly. That was a significant factor in setting the price. Before making the offer, Zysk suspected that Baker may have been mistaken about the number of bedrooms permitted. He investigated the issue prior to making an offer. He learned that since the property was only partially within a Wellhead Protection Zone, a house with more than one bedroom could be built depending on the results of a percolation test. The percolation test confirmed that a two-bedroom house could be built. Baker learned of his mistake. The mistake was a unilateral one. Zysk knew or had reason to know of Baker’s mistake. Under these circumstances, even if there were a contract resulting from the offer to purchase, the unilateral mistake rendered it void.

Order

Based upon the foregoing, the court ORDERS that judgment shall enter for the defendant Samuel Baker (“Baker”), individually and as Trustee of the S.M.B. Clifton Realty Trust on Counts I and II of the plaintiff, Joseph Zysk’s complaint without costs.

In making reference to Baker in this decision, the court recognizes that the defendant himself had limited involvement in the transaction because he had delegated full authority to his son.

Delivery of a deposit check to Zysk’s own broker is not the functional equivalent of delivery of the deposit to Baker or his broker.